Stover *v.* The Inhabitants of Bluehill.

———◆———

## ALONZO P. STOVER & ux., *versus* THE INHABITANTS OF BLUEHILL.

In an action against a town to recover damages for an injury received in consequence of a defective highway, the plaintiff is a competent witness.

In such cases, the defendants are liable for the increased damages, (if any,) arising from the unskilful treatment of the plaintiff without any fault on his part, by a surgeon of ordinary professional skill and knowledge.

Stover *v.* The Inhabitants of Bluehill.

ON EXCEPTIONS, to the rulings of DICKERSON, J.

CASE to recover damages for an injury to the female plaintiff, received in consequence of a defective highway.

The defendants excepted to the admission of the plaintiffs as witnesses, and to an instruction to the jury, which is stated in the opinion.

*Rowe*, for defendants, cited *Moore* v. *Abbott*, 32 Maine, 46; *Shepherd* v. *Chelsea*, 4 Allen, 113; *Kidder* v. *Dunstable*, 7 Gray, 104; *Rowell* v. *Lowell*, 7 Gray, 100; *Miller* v. *Mariners' Church*, 7 Maine, 51–55; 2 Parsons on Con., 454; *Keith* v. *Pinkham*, 43 Maine, 501; *Tuttle* v. *Holyoke*, 6 Gray, 447; *Eastman* v. *Sanborn*, 3 Allen, 594.

*Wiswell*, for plaintiffs.

There was also a motion to set aside the verdict, upon which no question of law arose.

The opinion of the Court was drawn up by

DICKERSON, J. — This case comes before this Court on exceptions and motion.

The defendant's objection to the competency of the plaintiffs, as witnesses, is not insisted upon in the argument. They were, however, properly allowed to testify. *Palmer* v. *Bangor*, 46 Maine, 325.

The exceptions relied upon were taken to the instructions of the presiding Judge to the jury upon the subject of damages, as follows : — that it was the duty of the plaintiffs to employ a surgeon of ordinary professional knowledge and skill, and to follow his necessary directions, and that, if the jury should find they had done so, the plaintiffs would be entitled to recover compensation for the damages sustained, though such surgeon should have treated the limb unskilfully, and by such unskilful treatment prevented it from recovering so soon as it would have recovered under skilful treatment. The exceptions raise the question whether the defendants are liable for the increased damages, if any, arisng from the unskilful treatment of the wife of plaintiff by

a surgeon of ordinary professional skill and knowledge, without any fault on her part. This question is clearly distinguishable from that class of cases, where a combination of causes, accidental, innocent, or blameworthy, have contributed to produce the original injury complained of. In this case, the cause of action is complete independently of the subject matter which gave rise to the exceptions. The case of *Moore* v. *Abbott*, 32 Maine, 46, and the cases in the 4th Allen and 7th Gray, cited by defendants' counsel, to the same point, have reference solely to the original cause of action, and not to the question of damages. The defendants are liable, not for all the possible, but only for the proximate consequences of their negligence; *causa proxima, non remota, spectatur.* The boundary between these two classes of consequences is so ill defined, that it is sometimes extremely difficult, not to say impossible, to trace it. Indeed, Professor Parsons, in his learned treatise on the Law of Contracts, vol. 2, p. 457, § 5, remarks, "that it is difficult, and perhaps, impossible, to lay down a definite rule which shall have, in all cases, practical value or efficacy, in determining for what consequences of an injury, a wrongdoer is to be held responsible." In *Harrison* v. *Berkley*, 1 Strobh., 548, the principle is laid down that "he shall not answer for those which the party grieved has contributed, by his own blameable negligence or wrong, to produce, or for any which such party, by proper diligence, might have prevented." And, in *Rigley* v. *Hewitt*, 5 Exch., 240, it was held "that he *is* responsible for all the mischievous consequences that may be reasonably expected to result under ordinary circumstances from such misconduct."

Very much, in this respect, must depend upon the facts and circumstances of each particular case. In the case at bar, the finding of the jury acquits the plaintiffs of all negligence or misconduct. They employed a competent surgeon. This was all they, unprofessional persons, could do. The necessity to do this was imposed upon them, not by their own fault, but by the fault of the defendants. If they

had neglected to procure the services of a competent surgeon, having the ability to do so, or employed an incompetent one, whereby the injury had been aggravated, it is clear that they could not recover damages for the injury thus increased; the law does not permit a party thus to take advantage of his own negligence or misconduct. Yet, upon the theory of the party excepting, the same legal consequences result to them from their diligence, as from their negligence, — from their discharge, as from their neglect of a duty imposed by law, if the surgeon employed, however competent, happens to increase the injury by unskilful treatment. It is difficult to discover the soundness of that principle which requires a party injured, without fault on his part, to insure, not only the surgeon's professional skill, but also his immunity from accident, mistake or error in judgment, and which precludes such party from recovering of the original wrongdoer damages arising from no fault on his part, and from causes beyond his power to control. On the contrary, there seems to be good reason for holding the party originally in fault responsible for the damages resulting to the innocent party under such circumstances. Indeed, the liability of a competent surgeon to mistake, accident, or error in judgment, as well as that of the party complaining to an increase of his injuries from other causes beyond his control, are among "the mischievous consequences," referred to in *Rigley* v. *Hewitt*, "that may reasonably be expected to result under ordinary circumstances from the defendants' misconduct," and for which they are responsible. The unskilful treatment of the surgeon, itself, if any there was, arose as a consequence of the original fault of the defendants. In the present imperfect state of medical science, and amidst the conflicting theories of medical men, as well as the uncertain reliance to be placed upon the different modes of treating injuries and diseases, it would not be difficult to make it doubtful, in a given case, if the professional treatment might not have been improved, or was unskilful, and thus a way of escape might be pre-

Stover *v.* The Inhabitants of Bluehill.

pared for wrongdoers from the legitimate and legal conse-
quences of their negligence or misconduct. The principle,
therefore, of holding the defendants responsible, is founded
in sound reasons of public policy. It is also sustained by
decided cases of courts of acknowledged authority.

In *Eastman* v. *Sanborn*, 3 Allen, 594, the hirer of a
horse, who had made him sick, by improperly feeding and
watering him, and returned him in this condition to the
owner, was held liable for his full value, the owner having
used reasonable care and employed a suitable veterinary sur-
geon, who treated him according to his best judgment, but
was unable to cure him, although such treatment was in
fact improper, and contributed to the horse's death. In that
case, the Court say, "if the plaintiff did, on the return of
the horse, employ suitable persons to take care of the horse,
and they were faithful in performing the service in which
they were employed, and the horse died, notwithstanding
their efforts to save and restore him, the death must be
attributed to the disease caused by the culpable neglect of
the defendant, even though the remedies applied in the
course of the treatment, instead of having their intended
effect, aggravated the disease, and contributed in some
degree to its fatal termination." In *Tuttle* v. *Holyoke*, 6
Gray, 447, the Court held, that if a horse, going off a high-
way, by reason of defect therein, falls upon a fence, and, in
being removed therefrom with reasonable care and skill,
suffers injury, the town is liable for such injury. So in
*Dean* v. *Keate*, 3 Camp., 4, Lord ELLENBOROUGH held that
the hirer is not responsible for any mistakes which a farrier,
whom he calls in to attend a hired horse sick, at the com-
mencement, or made so without his fault in the progress of
the journey, may commit in the treatment. In such case
the law requires that the party himself should be without
fault. As the bill of exceptions does not present a case of
*malpractice* of the attending surgeon, which would render
him liable to the plaintiff, we express no opinion upon that
question.

In support of the motion to set aside the verdict, it is argued that the case discloses gross carelessness on the part of the plaintiffs at the time of the accident, a want of diligence in employing a surgeon, and that the damages are excessive.

A review of the evidence, imperfectly reported, fails to satisfy us that the jury misapprehended it, or were influenced by prejudice, partiality, or other improper motive; and it is only in such contingency that the Court is authorized to set aside the verdict of a jury, as against evidence or the weight of evidence. Neither the existence of another road by which the plaintiffs might have returned to their home, nor previous notice of the condition of the road they took, nor the approaching darkness of evening, rendered it unlawful for the plaintiffs to pass over the road in question. They had a right to do so, exercising, at their peril, that ordinary care which the circumstances of the case should require.

The plaintiffs were driving at a walk, when the accident happened, and we are not prepared to say that ordinary care required them to get out of the sleigh, and feel their way over the drift which for thirty or forty rods nearly filled the road between the fences with snow of sufficient consistency to bear loaded ox teams. Nor do we perceive such negligence in procuring the attendance of a surgeon, as requires us to set the verdict aside on that account. The accident occurred in the evening, and a surgeon was sent for the next day, but he was absent from home, and did not attend until the day after he was called. It was not unnatural for the jury to infer that the plaintiffs had probable ground to believe that he would attend at the earliest practicable moment. Besides, if such had not been their reasonable expectation, there is no evidence that they could have obtained another competent surgeon at an earlier hour.

It was a case of permanent injury to the wrist of the wife plaintiff. In the matter of damages, so much depends upon her age and health, and her capacity for labor and useful-

ness, and especially as the Court can but imperfectly judge of the nature and extent of the injury,—it would be, at least, an exercise of questionable authority to disturb the verdict on the ground of excessive damages.

> *Exceptions and motion overruled,*
> *and judgment on the verdict.*

APPLETON, C. J., DAVIS, KENT and BARROWS, JJ., concurred.

CUTTING and WALTON, JJ., dissented.