Monte Dean **REDER**, minor, by Hope L. Reder, his Guardian, Appellant,

v.

**H. D. HANSON, M. D.**, Appellee.

No. 17671.

United States Court of Appeals Eighth Circuit.

Nov. 17, 1964.

Rehearing Denied Dec. 16, 1964.

Horace R. Jackson, Rapid City, S. D., made argument for appellant and filed brief with Frederick E. Saefke, Jr., Bismarck, N. D.

Philip Vogel, of Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N. D., made argument for appellee and filed brief with Zuger, Zuger & Bucklin, Bismarck, N. D.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and DELEHANT, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by plaintiff guardian from the dismissal of this action which she brought upon behalf of her minor son, Monte Reder, to recover damages for malpractice against the defendant, H. D. Hanson, M.D. The dismissal followed the sustaining of a motion to direct the verdict made by the defendant at the close of all the evidence. Jurisdiction, based upon diversity of citizenship, is established.

The motion for a directed verdict is based upon many grounds, including the ground that the plaintiff has failed to prove the injuries were proximately caused by defendant's negligence. It is readily apparent from the trial court's record statements that it based the direction of the verdict upon plaintiff's failure of proof on the proximate cause issue. If the trial court correctly determined such issue, an affirmance is required.

We shall summarize the facts bearing upon the probable cause issue. Monte Reder's parents, who live at Prairie City, South Dakota, for approximately six months prior to June 16, 1961, had noticed that Monte limped as he walked. Later, Monte complained of considerable pain in the hip. Upon the advice of their osteopathic physician, Monte's parents took Monte to Dr. Hanson, an orthopedic surgeon practicing at Bismarck, North Dakota, on June 16, 1961. Dr.

Hanson, as a result of examination aided by x-rays, correctly determined that Monte had Perthes Disease at the head of the right femur. Perthes Disease is a condition of the hip occurring in children characterized by a softening and flattening of the upper part of the ball of the hip joint. The disease is diagnosed by x-rays. The disease follows a fairly normal course, the period of degeneration from six months to two years, then a period of quiescence, then a period of regeneration about equal to the period of degeneration.

Dr. Hanson advised the parents that the proper treatment for the disease was to take the weight off the affected leg by bed rest or by protecting the affected leg with a cast or brace. Dr. Hanson followed the prescribed treatment except that he placed the cast on the left leg rather than on the diseased right leg. Dr. Hanson continued to treat the left leg until August 11, 1961, when for convenience of the parents, Monte was transferred to Dr. Ahrlin, an orthopedist at Rapid City, South Dakota.

Dr. Hanson wrote to Dr. Ahrlin about Monte's condition and treatment on August 17, 1961, referring to the left leg as the diseased leg. At the time Dr. Ahrlin first saw Monte on September 14, 1961, the cast was on the left leg. Dr. Ahrlin continued to treat the left leg until March 30, 1962. His records for March 30, 1962, show:

"This patient has a Legg-Perthes disease which involves the right leg. X-rays that had been taken in the past shows the right leg to be involved; x-rays reveal that my department show the right leg to be involved. However, he has been wearing a brace on the left leg and there has been no ill effects from this. However, the patient now has started using his sling for the right leg."

Dr. Ahrlin x-rayed both legs on September 26, 1961, again on January 9, 1962, and made other x-rays at subsequent times.

On the basis of such evidence, the trial court held that Dr. Hanson was not responsible for any erroneous treatment of Monte subsequent at least to September 26, 1961, the date Dr. Ahrlin took his own x-rays.

Plaintiff in brief states, "Plaintiff makes no contention that Defendant is legally responsible simply because of the referral and no such contention can properly be made. 70 C.J.S., Physicians and Surgeons, Sec. 54." The authority cited and the supporting cases clearly hold that a physician who terminates his employment and refers his patient to another physician who is not his employee, agent or partner, is not liable for injuries resulting from the latter's want of care or skill unless he did not exercise due care in making the recommendation of his successor. It is not claimed that any of the exceptions to the rule apply here.

Plaintiff does contend that Dr. Hanson, by reason of setting in motion the chain of events which injured Monte by treating the wrong leg and by misleading Dr. Ahrlin, is responsible for the results of the negligent treatment by Dr. Ahrlin.

 There is a reasonable basis for Dr. Ahrlin's initial reliance upon Dr. Hanson's report placing the disease in the left leg. However, Dr. Ahrlin in the course of his diagnosis and treatment of Monte took his own x-rays on September 26, 1961, and he is chargeable with information clearly revealed by such x-rays. It is established that such x-rays as well as all other x-rays showed the disease to be on the right side. For a period subsequent to September 26, 1961, Dr. Hanson cannot be held legally responsible for the consequences of any negligent treatment of Monte by Dr. Ahrlin.

Plaintiff urges, citing Polucha v. Landes, 60 N.D. 159, 233 N.W. 264, Pyke v. City of Jamestown, 15 N.D. 157, 107 N.W. 359, and Restatement, Torts, § 457, that one liable for injuries negligently inflicted is liable for aggravation thereof caused by malpractice of a physician.

The cases hold as stated, but plaintiff fails to note that in the cited cases it was established that the defendant was responsible for an initial injury. The scope of such rule is set out in Comment a to § 457, Restatement, Torts, which reads:

"a. *Additional harm from hospital or medical treatment.* The situation to which the rule stated in this Section is usually applicable is where the actor's negligence is the legal cause of bodily harm for which, even if nothing more were suffered, the other could recover damages. These injuries require the other to submit to medical, surgical and hospital services. The services are so rendered as to increase the harm or even to cause harm which is entirely different from that which the other had previously sustained. In such a case, the damages assessable against the actor include not only the injury originally caused by the actor's negligence but also the harm resulting from the manner in which the medical surgical or hospital services are rendered, irrespective of whether they are rendered in a mistaken or negligent manner, so long as the mistake or negligence is of the sort which is recognized as one of the risks which is inherent in the human fallibility of those who render such services."

In our present case unlike the situation in the authorities just discussed, there is no substantial evidence to support a finding that Dr. Hanson's negligent treatment proximately caused any injury or damage to Monte.

 The burden is upon the plaintiff to prove that some negligent act of the defendant proximately caused the injury. Schmitt v. Northern Improvement Co., 115 N.W.2d 713, 718; Farmers Home Mut. Ins. Co. v. Grand Forks Implement Co., 79 N.D. 177, 55 N.W.2d 315, 317; Johnson v. Minneapolis, St. P. & S. S. M. Ry., 54 N.D. 351, 209 N.W. 786, 789;

.38 Am.Jur., Negligence, § 285; 65 C.J.S. Negligence § 209.

In the Johnson case, the North Dakota court states:

"[T]he mere showing of such negligence does not fix a liability upon the defendant for the injuries that plaintiff may have received. The plaintiff must go further and plead and prove that such negligence was the proximate cause of the accident resulting in the plaintiff's injury. * * * Proximate cause has been defined to be 'that cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred.' " 209 N.W. 786, 789.

In Chicago, M., St. P. & P. R. R. v. Johnston's Fuel Liners, Inc., 122 N.W.2d 140, 149, the court discusses the sufficiency of the evidence to establish proximate cause and quotes with approval the test stated in Farmers Home Mut. Ins. Co. v. Grand Forks Implement Co., 79 N.D. 177, 55 N.W.2d 315, 318, reading as follows:

" 'If the evidence of circumstances will permit a reasonable inference of the alleged cause of injury and exclude other equally reasonable inferences of other causes, the proof is sufficient to take the case to the jury. 65 C.J.S., Negligence, § 244, pages 1091, 1092. If on the other hand, plaintiffs' proof is such that it is equally probable the injury was due to a cause for which defendant was not liable a prima facie case is not established.' "

1. The trial court in ruling upon the admissibility of Dr. Carpenter's testimony with respect to proximate cause specifically advised plaintiff's attorneys that he could see no basis upon which any theory of joint tort could be submitted to the jury and that in his view, Dr. Hanson was not responsible for any treatment given by Dr. Ahrlin subsequent to September 27, 1961. The court, among other things, stated:

To like effect, see Alexander v. Inland Steel Co., 8 Cir., 263 F.2d 314, 320; Westland Oil Co. v. Firestone Tire & Rubber Co., 8 Cir., 143 F.2d 326, 331.

In Barnes v. Bovenmyer, 122 N.W.2d 312, the Supreme Court of Iowa held that a malpractice case was properly dismissed because of failure to establish the negligence as the proximate cause of the injury. Among other things, the Court states:

"Of course proof of defendant's negligence did not entitle plaintiff to go to the jury. There must also be substantial evidence it was the proximate cause of plaintiff's damage. * * *

* * * * * *

"The matter of causal connection between defendant's negligence and loss of plaintiff's eye is not within the knowledge and experience of ordinary laymen. It is a question upon which only a medical expert can express an intelligent opinion. It is a question essentially within the domain of expert testimony. * * " 122 N.W.2d 312, 316–317.

The only evidence plaintiff offered on the proximate cause issue is that of Dr. Carpenter. His testimony was by deposition. Defendant objected to the pertinent evidence on many grounds. The court sustained the objections to the hypothetical question. An offer of proof was made of such testimony. We have serious doubt whether the court abused its discretion in sustaining the objection. The court considered such testimony in ruling upon the motion for directed verdict, and we shall follow the same course.[1]

"No. I will state frankly I think this question and the objection are both right on the borderline. The Court is inclined to—more toward the reception of evidence than to the sustaining of objections, if it is close on the matter. However, as I say, I do feel here that it is questionable. The question is—I think its questionable because of this extended period of time that's involved, and the reason that I brought this up

We fully agree with the trial court's conclusion that Dr. Carpenter's testimony does not establish that Dr. Hanson's treatment of Monte during the period for which he is responsible caused any injury or damage to Monte of any type claimed in the complaint.

The offer of proof shows that Dr. Carpenter commenced his answer as follows: "Answering the hypothetical question, in my opinion, bearing weight on the right leg from June 1961 to March 1962 would contribute to widening and flattening and delay in healing of the Perthes disease in the right hip." Dr. Carpenter goes on to say that as a result Monte will develop traumatic arthritis of the right hip when he reaches his middle twenties or thirties, the degree of which the witness is unable to state.

It is entirely clear that Dr. Carpenter's opinion with respect to damages was based not only on the treatment during the period of June 16 to September 26 but also on the period from September 27 to March 30, 1962, for which latter period the responsibility for proper treatment rests upon Dr. Ahrlin.

The record is devoid of testimony, expert or otherwise, to establish that Dr. Hanson's negligence for the period for which he is chargeable proximately caused any permanent injury or damage to Monte. Upon the record before us, a finding that Dr. Hanson's treatment for the June 16 to September 26 period was the proximate cause of the injury would be purely speculative. The injury could also have occurred in the six-month period during which the disease was developing prior to consultation with Dr. Hanson or subsequent to the time Dr. Hanson terminated his responsibility for Monte's treatment.

The court properly directed the verdict against, the plaintiff upon the ground that there is no substantial evidentiary support for a finding that any negligence attributable to Dr. Hanson proximately caused the injury or damage complained of.

Affirmed.

now is that unless it was your purpose on the part of the plaintiff to, after the answer—after the giving of the answer by Dr. Carpenter, to then limit it and restrict that period of time, then it seems to me that the proper thing for the Court to do right here and now would be to sustain the objection on that specific point.

"As I say, I think that many of the objections that have been made here may be good. I have considered them, however, in the light of the purpose of the question which has been propounded and in that light, as I say, I think some of the omissions and perhaps some of the assumptions which have been stated are not too material one way or the other, but it's the time element which is involved which I think is of paramount importance. At least that's the one that concerns the Court primarily."

The court inquired whether plaintiff anticipated introducing evidence as to damages caused by Dr. Hanson's treatment. Plaintiff's counsel advised they had no such evidence and that they considered such evidence unnecessary. Plaintiff was given until the next day to submit authorities or introduce further evidence. After the plaintiff rested without further testimony, the motion for directed verdict was made and sustained.