No. 47,309

EVELYN STOVALL, *Plaintiff-Appellant,* v. ALBERT C. HARMS, M. D.,
*Defendant-Appellee,* and GEORGE ITURRALDE, M. D., *Defendant.*

(522 P. 2d 353)

Opinion filed May 11, 1974.

*J. William Stapleton,* of Bronston and Smith, of Kansas City, argued the
cause, and *Lloyd Burke Bronston* and *William M. Tuley,* of the same firm, were
with him on the brief for the appellant.

*John T. Flannagan,* of Payne and Jones, of Olathe, argued the cause, and
*Keith Martin,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought to recover damages for
personal injuries received in an automobile collision. The plaintiff-
appellant claims that the accident was the result of negligence on
the part of two physicians in prescribing drugs to the plaintiff.
The trial court sustained a motion for summary judgment filed
on behalf of the defendant-appellee, Albert C. Harms, M. D. The
facts in the case are not greatly in dispute and are essentially as
follows: The plaintiff, Evelyn Stovall, then age 48, was involved
in an automobile collision on February 2, 1970. Following the
accident she called her attorney and told him she had been hurt
in the collision and that her family doctor had passed away. He
recommended that she see the defendant, Dr. Albert C. Harms. The
following day Mrs. Stovall consulted with Dr. Harms at his office
in Overland Park. After hearing her complaints Dr. Harms had
her admitted to the Shawnee Mission Hospital that same day.
Dr. Harms diagnosed Mrs. Stovall's condition as an acute strain
of her upper and lower back. Mrs. Stovall remained in the hos-
pital until February 16, 1970. Thereafter Dr. Harms treated her

in his office during February and March 1970, but she made little improvement. On March 30, 1970, Dr. Harms rehospitalized Mrs. Stovall in Shawnee Mission Hospital where she remained until April 9, 1970. Because Mrs. Stovall's back condition did not seem to be improving Dr. Harms had her examined by Dr. Whitehead, an orthopedic specialist. Dr. Harms also decided to call in Dr. Iturralde, a psychiatric specialist, for consultation. Dr. Harms and Dr. Iturralde both testified that Dr. Iturralde first saw Mrs. Stovall in the hospital on March 31, 1970. Mrs. Stovall in her deposition stated that she did not specifically recall seeing Dr. Iturralde in the hospital but that she did see several doctors and he may have been one of them. According to Dr. Iturralde's hospital notes Mrs. Stovall was suffering from a chronic anxiety reaction. Dr. Harms continued to treat Mrs. Stovall while she was in the hospital and last saw her on April 9, 1970, the date she was discharged. The parties are in agreement that Dr. Harms suggested to Mrs. Stovall that she consult with Dr. Iturralde. There is some disagreement as to what Dr. Harms told Mrs. Stovall. Dr. Harms testified in his deposition that he informed Mrs. Stovall that Dr. Iturralde was a psychiatrist and advised her to go to him for treatment. Mrs. Stovall vigorously denies that Dr. Harms informed her that Dr. Iturralde was a psychiatrist. She thought he was some kind of doctor that could treat her for her back.

Following Mrs. Stovall's discharge from the hospital on April 9, 1970, she called Dr. Harms' office to inquire about Dr. Iturralde's address which was given her. Mrs. Stovall first saw Dr. Iturralde in his office on April 11, 1970. Mrs. Stovall testified that at that time she could tell from his questions that he was a psychiatrist. She stated that when he started asking a lot of silly questions she put two and two together and figured out what he was. Mrs. Stovall had worked at the Osawatomie state hospital for two years where she had been around psychiatrists. Following the first consultation she returned to Dr. Iturralde for treatment on April 17, April 24 and May 1, 8, 15 and 22. On May 26, 1970, Mrs. Stovall was involved in another automobile accident which was the basis for the litigation now before the court. On April 3, 1972, Mrs. Stovall filed this action against Dr. Iturralde and Dr. Harms. The substance of her claim was that the automobile accident of May 26, 1970, was caused by drugs prescribed for her by Dr. Iturralde. The basis of her claim of negligence against Dr. Iturralde was

that he prescribed for her use an excessive quantity of highly dangerous drugs, that he failed to inform her of the risks involved in driving a motor vehicle while using the drugs and furthermore that Dr. Iturralde negligently warranted that it was safe for her to drive a motor vehicle while she was taking the drugs. The basis of her claim of liability against Dr. Harms was that Dr. Harms failed to inform her that Dr. Iturralde was a psychiatrist or the nature of his treatment, that Dr. Harms warranted the treatment of Dr. Iturralde in conjunction with his own treatment and that Dr. Harms failed properly to inform the plaintiff sufficiently to enable her to make a judgment as to whether to accept the recommended treatment of Dr. Iturralde. Dr. Harms promptly filed his answer and the parties then proceeded to take discovery depositions. The parties were afforded an adequate time to complete their discovery. The depositions of Mrs. Stovall, Dr. Iturralde and Dr. Harms were taken on November 16, 1972. On January 23, 1973, the defendant Harms filed a motion for summary judgment. On February 15, 1973, the motion of Dr. Harms for summary judgment was presented to the court. The evidentiary basis for the motion for summary judgment was the depositions of the parties. Dr. Harms contended that the undisputed evidence contained in the depositions failed to show any reasonable theory of liability against Dr. Harms in favor of the plaintiff. Counsel for the plaintiff did not request time to take additional depositions or to provide affidavits or other evidence in opposition to the motion for summary judgment. The trial court adopted findings of fact and conclusions of law, sustained the motion of the defendant, Dr. Harms, and granted summary judgment in his favor. The plaintiff has appealed that order to this court. It should be emphasized that the plaintiff's claim against Dr. Iturralde is not involved on this appeal and remains for determination in the district court.

The basic contention of the plaintiff Evelyn Stovall on this appeal is that the trial court prematurely granted summary judgment in favor of the defendant Dr. Harms. She contends that there were genuine issues as to material facts present in the case which precluded summary judgment. Plaintiff maintains that the district court erred in failing to give her the benefit of all inferences to be drawn from the evidence, in failing to construe the evidence in a light most favorable to her as nonmoving party and in failing to construe the pleadings in her favor. The defendant

Dr. Harms contends to the contrary that there is no genuine issue as to any material fact and that, on the basis of the undisputed evidence contained in the depositions, the defendant Harms was entitled to summary judgment as a matter of law.

The rules governing the propriety of summary judgment under K. S. A. 60-256 are stated in *Lawrence v. Deemy,* 204 Kan. 299, 461 P. 2d 770 and in *Ebert v. Mussett,* 214 Kan. 62, 519 P. 2d 687. In *Ebert* we stated as follows:

"Generally, summary judgment may be granted when the record before the court shows conclusively there remains no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. A mere surmise or belief on the part of the trial court that a party cannot prevail upon a trial will not warrant summary judgment if there remains a dispute as to a material fact. A material fact is one on which the controversy may be determined. The manifest purpose of a summary judgment is to avoid trial where there is no real issue of fact. In considering a motion for summary judgment, the court should not attempt to determine factual issues, but should search the record to determine whether factual issues do exist. Where there is a reasonable possibility of their existence, summary judgment will not lie. The court should give to the party against whom summary judgment is sought the benefit of all inferences that may be drawn from the facts under consideration. . . ." (p. 65.)

In *Ebert* we also emphasized the responsibility of a party opposing summary judgment to take steps to provide evidence by way of depositions or affidavits in opposition to the motion or if necessary to request time to make additional discovery. The nonmoving party can not rely solely upon the allegations in his pleadings. He must come forward with something of evidentiary value to justify his position.

The trial court should afford to the parties every reasonable opportunity to make discovery and to present their evidence in support of and in opposition to a motion for summary judgment. It is important that the trial court state in the record with particularity the evidentiary basis upon which the motion for summary judgment is to be determined. When this is done the parties cannot have any misunderstanding as to the evidentiary basis for the court's action and cannot thereafter complain that they were not given an opportunity to provide relevant evidence on the motion. In the case presented here the plaintiff Stovall does not contend that she has additional evidence to present in opposition to summary judgment nor does she claim she was denied a reasonable opportunity to obtain additional evidence. Our problem is to determine whether

or not the trial court erred in granting summary judgment on the basis of the evidence presented in the three discovery depositions of the parties.

Mrs. Stovall based her claim of liability against Dr. Harms on three theories: (1) That the defendant Dr. Iturralde was the agent of Dr. Harms with respect to the treatment of the plaintiff and therefore Dr. Harms is liable on the theory *respondeat superior;* (2) that Dr. Harms breached his duty to inform plaintiff so that she could intelligently consent to treatment by Dr. Iturralde; and (3) that Dr. Harms warranted the treatment of Dr. Iturralde to the plaintiff in conjunction with his own treatment. The theory of warranty of treatment is suggested in the petition filed by the plaintiff but has not been argued in the plaintiff's brief on this appeal. The plaintiff has not submitted any authority in support of such a theory and, if ever seriously advanced, we deem that it has been abandoned.

Is there a reasonable theory on which Dr. Harms may be held liable for any negligence on the part of Dr. Iturralde in prescribing drugs for Mrs. Stovall? The evidence is undisputed here that it was Dr. Iturralde not Dr. Harms, who prescribed drugs for Mrs. Stovall just prior to her accident on May 26, 1970. Ordinarily the liability of a physician or surgeon for damages for injuries suffered by a patient in the course of treatments administered is predicated on the failure of the physician or surgeon personally to exercise the requisite degree of skill. However, a physician or surgeon may be held answerable in some circumstances where he is free from personal negligence in the actual treatment of or operation on the patient as where the actual negligence is that of some third person for whose acts the physician or surgeon may be answerable. A comprehensive annotation on this subject citing cases from many jurisdictions may be found in 85 A. L. R. 2d 889. This annotation points out that an attempt is often made to hold a physician liable for the malpractice of another physician, although he himself may be free from personal negligence in the actual treatment of or operation on the patient. The theory of such liability has been based on the doctrine of *respondeat superior,* agency, concerted action for a common purpose, or negligence in the selection of the third person. We have held that a physician or surgeon is liable for the negligence or malpractice of another physician or surgeon acting as his agent, employee or assistant. (*Natanson v. Kline,* 186

Kan. 393, 350 P. 2d 1093; *Voss v. Bridwell,* 188 Kan. 643, 364 P. 2d 955.) It is generally held that a physician who calls in or recommends another physician or surgeon is not liable for the other's malpractice, at least where there was no agency or concert of action, or no negligence in the selection of the other physician or surgeon. Physicians independently employed or acting independently in the case are not vicariously liable, unless the one observed or, in the exercise of ordinary care, should have observed the wrongful act of the other. On the other hand, vicarious liability has been recognized where the physicians are jointly employed or acting jointly in the case. There may be joint liability where concurrent acts of neglience of two physicians result in injury to the patient. (*Cassity v. Brady,* 182 Kan. 381, 321 P. 2d 171.)

In *Cassity* we cited *Rose v. Sprague,* 248 Ky. 635, 59 S. W. 2d 554, where the Kentucky court held that where physicians are engaged and acting independently of each other in diagnosing and treating a patient, during different and distinct periods of time, each is only liable to his patient for his own wrong or negligence, but not for the negligence of the other, even though neither of them effects a cure of the patient's ailment.

In the case before us here Dr. Harms called in Dr. Iturralde as a psychiatric specialist to examine Mrs. Stovall and recommended to Mrs. Stovall that she accept treatment from him. Nowhere in the pleadings, or in the argument presented in the trial court or in this court, or in the evidence, is there a suggestion that Dr. Harms was negligent in selecting Dr. Iturralde as a psychiatric specialist. The deposition of Dr. Iturralde shows that he spent his early life in Argentina where he received his medical education. He took his internship in Chicago and received his psychiatric training at Washington University in St. Louis. He also received post-graduate training at Harvard Medical Center for a year. He was employed by the Veterans Administration for a period of time and a part of his job was to teach psychiatry at the Kansas University Medical Center. Dr. Iturralde has been licensed to practice medicine in Johnson county since 1959 and has specialized in psychiatry during that time. The depositions disclosed that on a number of occasions Dr. Harms has called in Dr. Iturralde as a psychiatric consultant. There is simply nothing in the record to show that Dr. Iturralde is not a fully qualified practicing psy-

chiatrist or that Dr. Harms was negligent in recommending him to Mrs. Stovall.

Furthermore the record does not indicate that there was a concerted action by Dr. Iturralde and Dr. Harms during the time Mrs. Stovall was treated by Dr. Iturralde. Dr. Harms last saw Mrs. Stovall on April 9, 1970, the day she was discharged from the hospital. Thereafter she was treated by Dr. Iturralde in his office from April 11, 1970, until the automobile accident occurred on May 26, 1970. There was some evidence in the case that when called in as a consultant Dr. Iturralde would submit a report to Dr. Harms when he had finished his examination or treatment and that sometimes patients would be returned to Dr. Harms for further treatment. Mrs. Stovall testified that she had faith in Dr. Harms and followed his directions in going to Dr. Iturralde and that she expected to return to Dr. Harms for a full release after her treatment with Dr. Iturralde had been completed. Mrs. Stovall stated that she considered Dr. Harms to be her "managing physician." Dr. Harms testified that on completion of the treatment by Dr. Iturralde he might well have resumed treatment of Mrs. Stovall or recommended that she be treated by the orthopedic specialist, Dr. Whitehead. Both Dr. Iturralde and Dr. Harms testified categorically that they were independent practicing physicians and that Dr. Harms had absolutely no control over Mrs. Stovall's treatment by Dr. Iturralde. We find nothing in the evidence to justify a claim that Dr. Harms and Dr. Iturralde were concurrently engaged in the treatment of Mrs. Stovall at the time the automobile accident occurred on May 26, 1970.

It is also clear that the trial court was absolutely correct in holding that Dr. Iturralde was not the agent of Dr. Harms. In *Voss v. Bridwell,* supra, we emphasized that in determining whether or not a person is the agent or servant of another it is necessary that he not only be subject to the latter's control or right of control with regard to the work to be done and the manner of performing it, but that this work is to be performed on the business of the master or for his benefit. Actual control, of course, is not essential; it is right to control which is determinative. Here the evidence is undisputed that Dr. Iturralde was a licensed medical doctor practicing his specialty of psychiatry. Dr. Harms as a general practitioner had no control whatsoever with regard to the treatment to be provided by Dr. Iturralde or the manner of perform-

ing it. Furthermore such treatment by Dr. Iturralde was to be performed for the benefit of Mrs. Stovall and not on behalf of Dr. Harms. Dr. Iturralde testified that he had no intention of sending the bill for his services to Dr. Harms; that it was his custom to send it directly to the patient or his insurance company. In view of the undisputed evidence as set forth above we have concluded that the trial court was entirely correct in holding that Dr. Harms could not be held vicariously liable for any negligence on the part of Dr. Iturralde on the basis of the doctrine of *respondeat superior* or agency.

The plaintiff's second theory of liability asserted against Dr. Harms is that Dr. Harms breached his duty to inform Mrs. Stovall of the risks and dangers involved in the course of the treatment she was to undergo with Dr. Iturralde. The rule as to informed consent was stated as follows in *Funke v. Fieldman*, 212 Kan. 524, 512 P. 2d 539:

"In the absence of an emergency a physician or surgeon has a legal obligation to make a reasonable disclosure to his patient of the nature and probable consequences of the suggested or recommended treatment, and to make a reasonable disclosure of the dangers within his knowledge which are incident or possible in the treatment he proposes to administer in order that his patient will have a basis to make an intelligent informed consent to the proposed treatment. But the duty of the physician is limited to those disclosures which a reasonable medical practitioner would make under the same or similar circumstances." (¶ 3.)

"What is a reasonable disclosure upon which an informed consent may rest depends upon the facts and circumstances in each case." (¶ 4.)

To the same effect are *Tatro v. Lueken*, 212 Kan. 606, 512 P. 2d 529; and *Collins v. Meeker*, 198 Kan. 390, 424 P. 2d 488.

In this case Mrs. Stovall complains that Dr. Harms breached his duty to her by failing to inform her that he was referring her to a psychiatrist. Dr. Harms in his testimony stated that he did fully advise Mrs. Stovall of that fact. Assuming for purposes of summary judgment that Dr. Harms failed to so advise Mrs. Stovall, the evidence is undisputed that Mrs. Stovall had full knowledge that Dr. Iturralde was a psychiatrist when she first visited his office on April 11, 1970, and that she returned to him for treatment on six separate occasions prior to her automobile accident on May 26, 1970. Under the circumstances it cannot reasonably be contended that any failure on the part of Dr. Harms to advise Mrs. Stovall that Dr. Iturralde was a psychiatrist had any causal connection

with the injury which she suffered in an automobile accident on May 26, 1970. Furthermore it does not seem reasonable to us that the doctrine of informed consent should be interpreted to require a general practitioner, referring his patient to a psychiatric specialist, to advise the patient of risks and dangers incident to the psychiatric treatment in the absence of unusual circumstances not present here. To hold to the contrary would impose an intolerable burden upon doctors who practice general medicine.

For the reasons set forth above the judgment is affirmed.