[No. 2281-3. Division Three. July 6, 1978.]

BRUCE LINDQUIST, ET AL, *Appellants,* v. DANIEL M. DENGEL, ET AL, *Respondents.*

*Rodney M. Reinbold* and *Edward A. Dawson,* for appellants.

*Gavin, Robinson, Kendrick, Redman & Mays* and *William Mays,* for respondents.

ROE, J.—Plaintiff Bruce Lindquist complained to defendant Dr. Dengel, a general practitioner, of symptoms similar to bronchitis. Plaintiff then told defendant doctor that priorly he had had tuberculosis. Defendant sent plaintiff's chest X rays to Dr. Rodkey, a TB specialist, who recommended that defendant perform certain tests, most of which defendant did not perform, possibly because of plaintiff's noncooperation. Defendant did not diagnose plaintiff's TB for approximately 1 1/2 years. When defendant finally did diagnose it, he referred plaintiff to Dr. Rodkey, who then took complete control of the treatment. Dr. Rodkey surgically removed part of plaintiff's left lung, but such surgery may not have been necessary had the disease been diagnosed sooner. Plaintiff sued only Dr. Dengel for malpractice; defendant denied negligence and alleged that plaintiff had been negligent. Defendant suggested Dr. Rodkey might have been negligent by calling Dr. Hudson, an expert witness, who opined that the surgery was unnecessary and that drug therapy would, even at that stage, have cured the plaintiff. The amount of damages awarded suggests that the jury believed such claims. The jury apparently found that defendant's failure to diagnose was negligent, but also found plaintiff 50 percent negligent, which he does not now challenge. Damages were assessed at $5,000, so the trial court entered judgment for plaintiff for $2,500.

Plaintiff appeals and assigns error to the trial court's refusal to give his proposed instruction that doctors, like other tort–feasors, are responsible for aggravation of the

victim's injuries caused by subsequent medical treatment, even if the second physician were negligent.[1] Plaintiff also objected emphatically to the court's instruction No. 15,[2] which told the jury that physicians are only liable for their own negligence in treating a patient if they act independently of any other treating physician. We hold, for the reasons discussed below, that it was error for the court to give instruction No. 15 while refusing to give plaintiff's proposed instruction.[3] The instructions as given effectively excused defendant from liability for damages arising from subsequent allegedly negligent medical treatment.[4]

■ Plaintiff's proposed instruction was based upon a well–established principle of tort law "that the original tort–feasor is responsible for any exacerbation of the injuries by negligent treatment." *Adams v. Allstate Ins. Co.*, 58 Wn.2d 659, 669, 364 P.2d 804 (1961), and cases and authorities cited. Restatement (Second) of Torts § 457 (1965), states the general principle this way:

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably

[1]Plaintiff's proposed instruction A, while not a model of clarity, does manage to state this theory sufficiently:

"A doctor, who is under a duty to comply with the recognized standard of practice for his profession prevailing at the time of treatment, cannot avoid liability which he would otherwise have for aggravation of injuries to his patient, if any, on the ground that it was caused by a negligent act of a later treating physician."

[2]Instruction No. 15 states:

"Physicians who are engaged and acting independently of each other in diagnosing and treating a patient during different and distinct periods of time, each is [sic] only liable to his patient for his own wrong or negligence, and not for the negligence of the other."

[3]Although plaintiff's brief concedes the correctness of instruction No. 15, that concession must be read as assuming that his proposed instruction should have been given as well.

[4]We express no opinion as to whether Dr. Rodkey's conduct actually constituted negligence.

requires, irrespective of whether such acts are done in a proper or a negligent manner.

Comment $b$[5] to this section states that the general rule exists because the human fallibility of medical practitioners creates a distinct possibility that a victim's injuries may be exacerbated when the tort–feasor's wrong causes the victim's entry into the medical system. Based upon this comment, defendant contends that the general rule should not apply when the original tort–feasor is a physician; he argues that the rule should apply only when the original tort–feasor has caused the victim's need to submit himself to the medical system in the first instance. Plaintiff already required specialized medical attention when he first consulted defendant; therefore, defendant argues, the policy behind the rule does not apply to this case.

Defendant's argument mistakes the underlying justification for the rule.

> The prevailing rule is that one who has been injured . . . can recover all damages proximately traceable to the primary negligence. This right of recovery extends even to subsequent aggravations whose probability the law regards as a sequence and natural result likely to flow from the original injury.

(Citations omitted.) *Martin v. Cunningham*, 93 Wash. 517, 518, 161 P. 355 (1916). The rule exists because

> it would not be difficult to make it doubtful, in a given case, if the professional treatment might not have been improved, or was unskilful, and thus a way of escape might be prepared for wrongdoers from the legitimate and legal consequences of their negligence or misconduct. The principle, therefore, of holding the defendants responsible, is founded in sound reasons of public policy.

---

[5]Restatement (Second) of Torts § 457, comment $b$ at 497 (1965), reads in part: "If the actor knows that his negligence may result in harm sufficiently severe to require such [medical] services, he should also recognize this as a risk involved in the other's forced submission to such services, and having put the other in a position to require them, the actor is responsible for any additional injury resulting from the other's exposure to this risk."

*Stover v. Bluehill,* 51 Me. 439, 442–43 (1863). When medical malpractice is the legal cause of an injury for which a victim could recover damages even if he suffered nothing further, the possibility is extremely high that the victim will require further medical treatment, with concomitant risk either of additional injury from subsequent negligent treatment, or of exacerbation of the condition which caused him to seek medical care in the first place. That defendant's negligence was mere neglect, rather than active infliction of injury, is irrelevant. It is true that defendant did not cause plaintiff's TB; the disease was a condition upon which defendant's negligence operated to cause the damage. Thus, defendant is responsible not for plaintiff's original condition but for allowing it to worsen, so that more radical treatment appeared necessary. If that latter treatment were given or performed negligently, defendant still may be held responsible because the possibility of such negligence is a foreseeable risk which arises from the original tort of failing to diagnose soon enough to permit effective treatment to be more limited. Defendant's negligence was the primary and present cause, so he should be held liable for any and all foreseeable damages, whether arising from further health care negligence or not. Thus, Dr. Rodkey's negligence, if any, is irrelevant.

Defendant also argues that the rule should not apply because he is a general practitioner, and general practitioners and specialists are subject to different standards of care. *Atkins v. Clein,* 3 Wn.2d 168, 100 P.2d 1 (1940). Holding an original tort–feasor liable for subsequent exacerbation due to malpractice does not subject him to any standard of care other than that from which his original liability arose. The rule does not hold the general practitioner to a specialist's standard of care; liability for such further damage arises because it was proximately caused by the original tort.

In *Cokas v. Perkins,* 252 F. Supp. 563, 565 (D.D.C. 1966), the court stated:

The instant case is factually unusual in that both the original and subsequent alleged tortfeasors are medical

practitioners. However, of itself, this would not seem to be a sufficient distinction to prevent the operation of this rule, see Corbett v. Clarke, 187 Va. 222, 46 S.E.2d 327 (1948), . . .

*Bessinger v. De Loach,* 230 S.C. 1, 94 S.E.2d 3 (1956), remanded the cause for retrial after the lower court had directed a verdict for defendant.

> The evidence developed a controversy between the defendant [dentist] and the physician, the former . . . contending that the treatment by the physician aggravated plaintiff's condition. . . . [T]he following principle may come into play upon retrial: "The general rule is that if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the negligent act of the physician as a part of the immediate and direct damages which naturally flow from the original injury." *Corbett v. Clarke,* 187 Va. 222, 46 S. E. 2d 327, 328 [1948].

*Bessinger v. De Loach, supra* at 4. The court also cited section 457 of the Restatement as supporting authority. *Corbett v. Clarke,* 187 Va. 222, 46 S.E.2d 327 (1948), also involved a medical practitioner as an original tort–feasor and a second practitioner who aggravated the victim's injury. Since the second practitioner's conduct had been more than merely negligent, amounting instead to gross negligence, the court held that the victim had suffered two "separate and distinct torts," so that her having released the original tort–feasor did not foreclose her proceeding against the second practitioner. *See* Restatement (Second) of Torts § 457, comment *d* at 498 (1965).

Defendant relies heavily upon *Reder v. Hanson,* 338 F.2d 244 (8th Cir. 1964). Plaintiff was a young boy with a limp which Dr. Hanson diagnosed correctly but then treated negligently by putting a cast on the wrong leg. Dr. Hanson later wrote to Dr. Ahrlin, who was to take over sole care of the plaintiff, but referred to the wrong leg as the one requiring treatment. On the basis of that letter, Dr. Ahrlin continued to treat the wrong leg. After a time Dr. Ahrlin

made his own diagnostic tests, but then he still continued to treat the wrong leg. The plaintiff contended that Dr. Hanson, by

> setting in motion the chain of events which injured [plaintiff] by treating the wrong leg and by misleading Dr. Ahrlin, is responsible for the results of the negligent treatment by Dr. Ahrlin.

*Reder v. Hanson, supra* at 246. The court stated that Dr. Ahrlin's performing his independent diagnosis relieved Dr. Hanson of responsibility for the results thereafter of the continuing negligent treatment. Because of this, defendant here contends that *Reder* required only instruction No. 15 since the case held that Dr. Hanson's negligence could not subject him to liability for Dr. Ahrlin's subsequent, and independently negligent, treatment. However, *Reder* must be distinguished from this case: Dr. Hanson was absolved of liability, and the court held that the general rule did not apply, because there was

> no substantial evidence to support a finding that Dr. Hanson's negligent treatment proximately *caused any injury or damage* to [the plaintiff].

(Italics ours.) *Reder v. Hanson, supra* at 246. Substantial evidence in this case supports the jury's finding that Dr. Dengel's negligent failure to diagnose did cause damage to the plaintiff. Dr. Hanson was held not to have been an original tort–feasor; Dr. Dengel was held to be an original tort–feasor.

Defendant's contention is that the only theory applicable in this case is that each physician, acting independently, is only liable to the patient for his own wrong. Defendant cites *Conrad v. Lakewood Gen. Hosp.,* 67 Wn.2d 934, 410 P.2d 785, 10 A.L.R.3d 1 (1966), which does support this general rule, but is not in point. Two doctors were concurrently negligent in that case; neither was able to shift liability completely to the other. The court set out three conditions, each of which could result in one doctor's being vicariously liable for another doctor's tort. It is true, as defendant insists, that none of these conditions obtain here;

however, the instant case is not based upon vicarious liability. An original tort–feasor is liable for subsequent aggravation, whether done negligently or not, because the damage flows from the original harm. None of the other cases which defendant cites is in point.[6]

Plaintiff has requested that a new trial be limited to the issue of damages. We note that the actual net award, $2,500, closely approximated plaintiff's special damages which presumably included Dr. Rodkey's bill. Such an award strongly indicates, despite the jury's finding of 50 percent comparative negligence on plaintiff's part, that the verdict was probably a compromise on the issue of liability as well as damages.

The judgment is reversed and the cause remanded for a new trial on all issues.

MUNSON, C.J., and MCINTURFF, J., concur.

Reconsideration denied August 1, 1978.

Review granted by Supreme Court December 1, 1978.

---

[6]In *DeNike v. Mowery,* 69 Wn.2d 357, 418 P.2d 1010 (1966), the victim's having released the original tort–feasor, a negligent driver, did not release the negligent doctor when the victim had been compensated only for his original injuries and not for those aggravated or initiated by medical treatment. In both *Stovall v. Harms,* 214 Kan. 835, 522 P.2d 353 (1974), and *Powers v. Scutchfield,* 137 Ind. App. 211, 205 N.E.2d 326 (1965), the first doctor to provide treatment was held not to have had any liability to the patient; thus, neither case involved a doctor as original tort–feasor.