277 N.J. Super. 260 (1994)
649 A.2d 637
LOURDES G. HERRARA AND BUENAVENTURA R. HERRARA, PLAINTIFFS,
v.
ATLANTIC CITY SURGICAL GROUP, P.A.; MORTON A. ROSENBLATT, M.D.; ISLAND MEDICAL GROUP; JOHN A. LINSK, M.D.; AUSTIN J. GERBER, D.O.; HARRY A. SWEENEY, D.O.; ATLANTIC CITY MEDICAL CENTER; VINCENT AZARCON, M.D.; JOHN DOE I THROUGH JOHN DOE VI, FICTITIOUS NAMES, J/S/A, DEFENDANTS.
Superior Court of New Jersey, Law Division Atlantic County.
Decided June 9, 1994.
*262 Jerry C. Goldhagen for plaintiffs.
James H. Moody for defendants A.C. Surgical Group, Island Medical Group and Morton A. Rosenblatt, M.D. (Orlovsky, Moody Schaaf & Gabrysiak, attorneys).
Dominic A. DeLaurentis, Jr. for defendant John A. Linsk, M.D. (Stanley P. Stahl, attorneys).
Donald J. Grasso, for defendants Austin J. Gerber, D.O. and Harry A. Sweeney, D.O. (Orlovsky, Grasso & Bolger, attorneys).
WINKELSTEIN, J.S.C.
This is a medical malpractice case. The issue is whether a referring physician has a duty to obtain the patient's informed consent to surgery that is to be performed by another doctor. In other words, plaintiff claims that the referring doctors were under a duty to explain to her all of the material risks and options available to her, even though her surgery was to be performed by another physician.
The issue is before the court on a motion for involuntary dismissal (R. 4:37-2(b)). For purposes of the motion, all of plaintiff's proofs will be accepted as true.[1]
*263 Plaintiff Lourdes Herrara was born in the Philippines.[2] She came to the United States as a tourist in 1978 and became a U.S. Citizen in 1985. In May 1987 she discovered what she described as a small ball in her right breast two inches below the nipple. At that time she did not seek any medical treatment.
In October 1987 she returned to the Philippines to visit family. On November 30, 1987, while in the Philippines, she went to a family friend, a surgeon, who removed the lump. A pathology report was prepared and a diagnosis was made of mucinous carcinoma of the right breast. According to plaintiff, the doctor told her she would require additional surgery which she assumed was the removal of her right breast. In other words, she would require a mastectomy.
Plaintiff wanted to consider other options to surgery. She decided to wait, however, until she returned to the United States to obtain additional medical advice as to whether or not additional surgery was necessary.
She returned to the United States in early March 1988. On March 14 she consulted with doctors Austin Gerber and Harry Sweeney, who are family practitioners, not experts in either oncology or surgery. Plaintiff did not have a physician who she saw regularly in the U.S., but her husband had been treated by doctors Gerber and Sweeney, and plaintiff's daughter, a nurse, had previously worked in their office. Both doctors examined her. She did not show them the pathology report from the Philippines at that time but did tell them the doctor in the Philippines told her she had cancer and needed additional surgery. Drs. Gerber and Sweeney referred plaintiff to Dr. Joseph A. Linsk,[3] a medical oncologist. Dr. Linsk examined plaintiff on March 21. He aspirated breast tissue from the area of the scar remaining from her *264 operation in the Philippines. Plaintiff told Dr. Linsk that the doctor in the Philippines said she had cancer and additional surgery was necessary. Dr. Linsk did not give plaintiff the results of the tissue aspiration at that time.
She returned to Dr. Sweeney on March 23. Dr. Sweeney then called Dr. Linsk who told him during the telephone conversation that the aspirated tissue was healthy. Dr. Sweeney did not discuss with plaintiff any other test results, nor did he discuss with her the affects or consequences of mucinous carcinoma. During the office visit, plaintiff showed Dr. Sweeney the pathology report from the Philippines. After reviewing it, Dr. Sweeney told plaintiff that she required a mastectomy. He did not mention any other options to her. Plaintiff was not satisfied with the diagnosis and asked Dr. Sweeney if there were additional tests she could take. He sent her back to Dr. Linsk.
On March 25 plaintiff returned to Dr. Linsk. At that time, she showed him the Phillipine pathology report. Dr. Linsk took blood from her and sent her for mammography. He also told her, after reviewing the pathology report, that she required a mastectomy. He did not discuss with her any other options.
She returned to Dr. Sweeney on March 28. Dr. Sweeney told her the mammography results were good but she still required a mastectomy. He told her she was too young to die and needed the operation. No options were discussed. Plaintiff did not agree to have the mastectomy at that time, but she called Dr. Sweeney two days later and agreed to it. Dr. Sweeney told her that he would get her a good surgeon and referred her to doctor Morton Rosenblatt, a general surgeon.
On April 1, 1988, plaintiff met with Dr. Rosenblatt. She showed him the pathology report from the Philippines. He took her history and examined her. According to plaintiff, he did not discuss treatment options for mucinous carcinoma; rather, he told her she needed a mastectomy. She agreed to have the surgery and on April 11, 1988, a modified radical mastectomy was successfully performed.
*265 At the close of plaintiff's case, defendants Linsk, Gerber and Sweeney move for involuntary dismissal. They argue that assuming no alternatives to surgery were discussed with plaintiff by any of the doctors, and further accepting as true that a reasonably prudent person would not have had the surgery if adequately informed, defendants Linsk, Gerber and Sweeney, as referring physicians who neither performed the surgery nor offered a course of treatment to plaintiff, had no duty to plaintiff once the referral was made.[4] The moving defendants submit that the duty to inform her of the material risks of, and options to, the surgery was that of Dr. Rosenblatt, who performed the surgery.
The standard of disclosure for a physician to a patient has been described as the "prudent patient" or "materiality of risk" standard. Largey v. Rothman, 110 N.J. 204, 212, 540 A.2d 504 (1988). In adopting the prudent patient standard, the Supreme Court in Largey emphasized the patient's right of self-determination. Id. at 214, 540 A.2d 504. The foundation for the physician's duty to disclose is founded on the idea that "it is the prerogative of the patient, not the physician, to determine for himself the direction in which his interests seem to lie." Id. (citing Canterbury v. Spence, 464 F.2d. 772, 781 (D.C. Cir.1972), cert. den., 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d. 518 (1972)). The purpose behind the prudent patient standard is to allow a patient to decide for himself whether to undergo a specific course of treatment or surgery. The question is what a prudent person in the patient's position would have decided if suitably informed of all of the material perils and risks. Largey, supra, at 215, 540 A.2d 504. If the prudent patient, once fully informed, would have decided not to undergo the suggested course of treatment, causation between *266 the failure to inform and the patient's injuries is established. Id. at 215, 540 A.2d 504.
Plaintiff contends that this standard must be applied not only to Dr. Rosenblatt, who actually performed the surgery, but to Drs. Gerber, Sweeney and Linsk, who recommended a mastectomy but offered no other options to plaintiff. The court is satisfied, however, that no such duty exists.
Although not directly addressed in our case law, a number of decisions have implicitly come to this conclusion. In Perna v. Pirozzi, 92 N.J. 446, 460-461, 457 A.2d 431 (1983), the Court set forth the following in discussing the doctrine of informed consent:
Under the doctrine, the patient who consents to an operation is given the opportunity to show that the surgeon withheld information concerning "the inherent and potential hazards of the proposed treatment, the alternatives to that treatment, if any, and the results likely if the patient remains untreated." Canterbury v. Spence, supra, 464 F.2d at 787-88. If the patient succeeds in proving that the surgeon did not comply with the applicable standard for disclosure, the consent is vitiated. See Canterbury v. Spence, supra, 464 F.2d at 782; 2 Louisville and Williams, Medical Malpractice, Section 22.08 (1982).
It is "the surgeon", the one who will perform the treatment, who is charged with the duty to disclose. Behringer Est. v. Princeton Med. Ctr., 249 N.J. Super. 597, 650, 592 A.2d 1251 (Law Div. 1991) ("The physician exposing the patient to a course of treatment has a duty to explain, in terms understandable to the patient, what the physician proposes to do.") (emphasis supplied); Battenfeld v. Gregory, 247 N.J. Super. 538, 551, 589 A.2d 1059 (App.Div. 1991) ("Under the doctrine [of informed consent], the patient who consents to an operation is given the opportunity to show that the physician withheld information concerning the inherent and potential hazards of the proposed treatment, the alternatives, if any, and the results likely if the patient refuses the prescribed course.") (emphasis supplied).
In Brandt v. Grubin, 131 N.J. Super. 182, 329 A.2d 82 (Law Div. 1974), Judge Dreier came to a similar conclusion in his analysis of when a physician is deemed to have abandoned a patient. In Brandt, the original treating physician referred the patient to *267 another doctor for specialized treatment. The court concluded that a doctor, who, after examining a patient, determines that he is unable to help the patient, refers the patient to competent medical assistance, he or she should not be held liable for the acts of subsequent treating professionals. Id. at 194, 329 A.2d 82. The doctor's duty to the patient ends once the patient is referred to competent medical care. Id. at 192-194, 329 A.2d 82.
Case law in foreign jurisdictions support this proposition. In Stovall v. Harms, 214 Kan. 835, 522 P.2d 353 (Sup.Ct. 1974), a similar issue was directly addressed. Dr. Harms, a general practitioner, was treating the plaintiff for acute strain of her upper and lower back. She was not responding to treatment and was referred to Dr. Iturralde, a psychiatrist, for consultation. As a result of Dr. Iturralde's course of treatment, the plaintiff took medication which allegedly caused her to become involved in a motor vehicle accident. Her claim was that the doctors failed to properly inform her of the possible affects of the medication administered to her. The Kansas Supreme Court found that in the absence of an agency relationship between two physicians, or that they acted in concert, a physician who refers a patient to another physician is not liable for the other's malpractice. The court concluded that to hold to the contrary would impose an "intolerable burden upon doctors who practice general medicine." Id., 522 P.2d at 358.
In Johnson v. Whitehurst, 652 S.W.2d 441 (Tex. Ct. App. 1983), the issue was whether the referring doctor had a duty to obtain the patient's informed consent to surgery that was to be performed by another doctor. The court concluded no such duty existed.
"Dr. Bautista (the referring doctor) is not a surgeon and therefore could not perform the procedure. He recommended that Dr. Whitehurst be called into the case. Dr. Whitehurst is a surgeon, and being more familiar with the proposed surgical procedure, could inform the appellant of the possible risks and consequences. *268 Under these facts, the law requires only that Dr. Bautista exercise ordinary care in choosing Dr. Whitehurst." Id. at 445.[5]
In the instant case, Drs. Gerber and Sweeney are general family practitioners. They have no expertise in the treatment of cancer. They do not perform surgery. They acted as referring physicians. They believed that plaintiff required a mastectomy. They did not act upon that belief by offering plaintiff any course of treatment, but referred her to Dr. Rosenblatt, a surgeon. If there were options available to plaintiff other than the mastectomy, it was the responsibility of the surgeon to give those options. To conclude otherwise would impose upon a physician who refers a patient to another doctor for a course of treatment that the referring physician is unqualified or unwilling to administer, an obligation to explain risks and options which the referring physician may neither be trained or qualified to explain. No such duty does or should exist.
"[W]hether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Kelly v. Gwinnell, 96 N.J. 538, 544, 476 A.2d 1219 (1984), (citing Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962)). The risk occurs when the patient undergoes, or declines to undergo, the course of treatment. No public interest would be served by imposing a duty  to explain to a patient the options and risks involved  on a physician who was not going to administer the treatment. The treating physician has control over the course of treatment and theoretically is qualified to perform it. The referring doctor has neither the control, nor generally, the qualifications.
The treating physician exposes the patient to the risks, and it is the treating physician who must explain those risks. It is his or her duty to disclose to the patient sufficient information to enable *269 the patient to "... evaluate knowledgeably the options available and the risks attendant upon each' before subjecting that patient to a course of treatment.'" Skripek v. Bergamo, 200 N.J. Super. 620, 633, 491 A.2d 1336 (App.Div. 1985).
As family practitioners, Drs. Gerber and Sweeney were never in a position to explain the material risks and options available for the treatment of breast cancer. To place a duty on them to do so would be inappropriate and unfair, and contrary to the public interest.
Dr. Linsk is an expert in medical oncology. He is neither a surgeon nor a radiologic oncologist. There was no testimony that he was in a position to render any course of treatment to plaintiff. He is not a specialist in the area of medicine that plaintiff required for her illness. There was no evidence that the types of cancer treatment generally given by Dr. Linsk to his patients were available to plaintiff. She needed either the mastectomy, or some lesser degree of surgery with radiation. As a medical oncologist, Dr. Linsk was neither trained nor licensed to render this type of treatment. Although he is a specialist, it was in an area of medicine not required for plaintiff's care. As such, he had no duty to plaintiff to explain the material risks of surgery or her other available options before Dr. Rosenblatt performed the surgery.
Plaintiff also argues that the physicians were working in concert. There is no evidence to support this argument. All the doctors acted independently. They each had their own licenses and, with the exception of doctors Gerber and Sweeney, who practiced in a partnership, practiced independently of each other.
Nor was there any evidence of an agency relationship. The key element to any agency situation is control. Pelliccioni v. Shuyler Packing Co., 140 N.J. Super. 190, 198-99, 356 A.2d 4 (App.Div. 1976). There was no testimony that any of the referring physicians had any control over Dr. Rosenblatt or vice versa. Dr. Rosenblatt testified that he made the decision to do the surgery on his own, without speaking to the referring physicians. Any *270 allegation that the doctors were working in concert or were otherwise working under some agency relationship must fail.
For all of the above reasons, plaintiff's claims against Drs. Linsk, Gerber and Sweeney are dismissed. As they were not physicians who subjected plaintiff to a course of treatment or performed the surgery, they had no duty to inform plaintiff of the material risks of, and options to, her surgery.
NOTES
[1] This opinion is a comprehensive supplement to my oral decision from the bench.
[2] Lourdes Herrara will be referred to as the plaintiff in this opinion. Buenaventura Herrara, also a plaintiff, is the husband of Lourdes Herrara and has a per quod claim.
[3] Joseph A. Linsk, M.D. is improperly named in the caption as John A. Linsk.
[4] Dr. Rosenblatt did not join in or oppose the motion. Dr. Rosenblatt agrees that, as the physician who performed the surgery, he was under a duty to properly inform plaintiff of the material risks of and options to the surgery. Dr. Rosenblatt does not, however, agree that he failed to properly inform plaintiff of the material risks and appropriate options available to her. Whether doctor Rosenblatt breached this duty is a jury question.
[5] There is no allegation that Dr. Rosenblatt is not a fully qualified surgeon, experienced in breast surgery or that the referring doctors did not exercise ordinary care in referring plaintiff to him.