Joseph Graddy, Respondent, *v.* New York Medical College et al., Appellants, et al., Defendants.

First Department, November 7, 1963.

*Richard E. Shandell* of counsel (*Desmond T. Barry* and *Joseph J. Brophy* with him on the brief; *Barry, Treanor, Shandell & Brophy,* attorneys), for Alvin M. Street, appellant.

*Donald J. Fager* of counsel (*Martin, Clearwater & Bell,* attorneys), for New York Medical College and another, appellants.

*John J. Tomich* of counsel (*Joseph Dean Edwards,* attorney), for Flower Anesthetists Associates, appellant.

*Stanley Tessel* of counsel (*Bernard Turkewitz* with him on the brief; *Turkewitz & Tessel,* attorneys), for respondent.

BERGAN, J. Upon an adequate record it has been found that plaintiff suffered injury resulting from negligence in the course of surgical treatment by defendant Edward G. Bell, who does

not appeal. A vicarious liability has also been imposed on defendant-appellant Alvin M. Street, who took no part in the medical or surgical management of plaintiff's treatment, but who had office and financial arrangements with Dr. Bell in the practice of medicine.

The liability thus imposed on Dr. Street cuts deeper than any case thus far reported in New York, and, as far as we have observed, in other jurisdictions. The problem presented is of significance in the practice of medicine and in affecting liability resting on the arrangements made by physicians for the care and treatment of each other's patients.

The record demonstrates that both Dr. Street and Dr. Bell were specialists in otolaryngology. They shared one medical office which they used at different periods of the day and shared the services of a secretary and the use of professional equipment and office supplies. There was no partnership between them in the practice of medicine; each had separate patients and billed these patients as individual practitioners. But a patient of one physician would, in his absence, be treated by the other if the patient consented. In such case the physician would bill his own patient for the service and pay half of it to the other who had performed the service.

Plaintiff had consulted Dr. Street in April, 1959 and had been treated on two occasions for complaints referable to his nose and throat. Dr. Street had advised against surgical treatment. Dr. Street himself became ill and did not thereafter see plaintiff, who on May 11 came back to the office where he was told that Dr. Street was ill and that Dr. Bell, who was then in the office, was caring for his patients. Plaintiff related the same symptoms he had previously given Dr. Street and Dr. Bell advised surgery, which he himself undertook to perform on May 13 at the Flower and Fifth Avenue Hospitals, one of the defendants in the case.

A verdict having been returned by the jury against Dr. Bell, the court, which had by consent not submitted the issue of Dr. Street's liability but had held it subject to his view of the law after the verdict came in, ruled that Dr. Street was liable for Dr. Bell's negligence and directed judgment accordingly. The nexus of relationship, as the court saw it, was the financial interest which Dr. Street would have in the fee for the services performed by Dr. Bell. In the opinion of the court the fact that Dr. Street left it to Dr. Bell to exercise his own professional judgment " upon his — Dr. Street's — patients, to the latter's economic advantage " was decisive. Respondent on this appeal argues that if a label must be put on the relationship " it is that of joint venturers ".

In the absence of some recognized traditional legal relationship such as partnership, master and servant, or agency, between physicians in the treatment of patients, the imposition of liability on one for the negligence of the other has been largely limited to situations of joint action in diagnosis or treatment or some control of the course of treatment of one by the other. In *Bing* v. *Thunig* (2 N Y 2d 656), for example, liability was imposed on a hospital for the negligence of nurses employed by the hospital; in *Mrachek* v. *Sunshine Biscuit* (308 N. Y. 116), liability was similarly imposed on a business corporation, under very limited circumstances, for the negligence of a physician in its employ. (See, e.g., *Matter of Bernstein* v. *Beth Israel Hosp.*, 236 N. Y. 268.)

Where physicians actually participate together in diagnosis and treatment, they may each incur a liability for the negligence of the other even though a more active part in the treatment may have been taken by one of them. (*Rodgers* v. *Canfield*, 272 Mich. 562, 564), but the Supreme Court of Michigan noted that any act of negligence " by one, in the absence of the other, unless concerted, could not be attributed to the nonparticipant ".

A family physician who participated in the diagnosis of a fracture for which a cast was negligently applied by a specialist and continued in active charge of the case after the cast was applied was held jointly negligent (*Morrill* v. *Komasinski*, 256 Wis. 417). This is the general rule: " Physicians employed together by the patient, and diagnosing or treating the case together, without withdrawal by, or discharge of, either, owe the same duty and are jointly liable for any negligence." (70 C. J. S., Physicians and Surgeons, § 54, subd. c, p. 977.) For a discussion of the rule applicable to medical partnership and agency in rendering medical care, see *Simons* v. *Northern Pacific Ry. Co.* (94 Mont. 355). As to liability where one physician is the employee of another, see *Moulton* v. *Huckleberry* (150 Ore. 538).

But a referral of a patient by one physician to another competent physician, absent partnership, employment, or agency, upon abundant authority, does not impose a liability on the referring physician. (*Nelson* v. *Sandell*, 202 Iowa 109; *Nash* v. *Royster*, 189 N. C. 408; *Moore* v. *Lee*, 109 Tex. 391; *Mayer* v. *Hipke*, 183 Wis. 382.) An exhaustive discussion of the problem appears in *Smith* v. *Beard* (56 Wyo. 375) which, although not quite in point, has some parallel to the case now before us.

The general rule, synthesized from the authorities in many States on this subject, is that " A physician who is unable or unwilling to assume or continue the treatment of a case, and

recommends or sends another physician who is not his employee, agent, or partner, is not liable for injuries resulting from the latter's want of skill or care unless he did not exercise due care in making the recommendation or substitution." (70 C. J. S., Physicians and Surgeons, § 54, subd. d, p. 978.)

Although the movement of the law has been in the direction of broadening the base of derived liability to others from the professional acts of physicians, this has been largely achieved by looking differently than we formerly did at the highly individualized independence of judgment of a physician in the area of professional diagnosis and treatment. Even in situations when he would normally be regarded as under control of another, a physician had been treated as an "independent contractor" and liability for his negligence was not passed on (*Schloendorff* v. *Society of N. Y. Hosp.*, 211 N. Y. 125, 129).

But this limitation of liability has been broken through in situations of control to which the physician has submitted himself. Although the rule of liability is broadening out in this area, we think it ought not be extended to rest on a situation where there is neither a legal nor an actual control of the treating physician by the other physician and the relationship between them upon which responsibility is sought to be imputed turns upon a shared office and an agreement to service each other's patients for a shared fee.

This is something less, and quite different from, a relationship of master and servant or agency upon which vicarious liability has thus far rested. The implications of such an enlarged liability would tend to discourage a physician from arranging to have another care for his patients on his illness or absence and thus curtail the availability of medical service.

On the whole this extension of liability should not be made on the record now before us. If splitting of fees in the absence of active participation in the service or of a written partnership agreement was professionally irregular (Education Law, § 6514) that should be dealt with rather by appropriate disciplinary action than by an extension of vicarious liability. Thus, in our view, the judgment against appellant Street should not stand.

The judgment against the Flower and Fifth Avenue Hospitals and against the New York Medical College, concerning which no distinction from the hospital is suggested on appeal, rests on a different base. By formal concession in the record, Dr. Cesar Vijil, a resident in anesthesiology, was an employee of the hospital. Dr. Vijil was a graduate in medicine of a Central American medical school but had not been admitted to practice in New York.

It could be found he was assigned by someone in the hospital's department of anesthesiology to plaintiff's case, although the exact process of assignment is open to some dispute. The medical proof in the record is adequate to find that in the steps taken to administer anesthesia to the plaintiff, and particularly in the failure to recognize early the development of symptoms in the patient indicating grave physical peril, the anesthetist failed to follow standard procedures and could be found negligent. In these circumstances the hospital becomes liable. (*Bing* v. *Thunig,* 2 N Y 2d 656, *supra.*) Indeed, the hospital on appeal does not stress an absence of liability but rests its case largely on purported errors on the trial which we regard as insufficient to disturb the verdict.

The liability imposed on defendants Fierro and Berger, doing business as Flower Anesthetists Associates, is based on a purported control of Dr. Vijil by these two defendants in the administration of anesthesia in the hospital and also upon their purported peripheral participation in the anesthesia given to plaintiff. There is also a suggestion in the record that Dr. Vijil was to some extent an employee of the associates.

Dr. Frank Fierro and Dr. Howard C. Berger were partners in the practice of medicine and in the specialty of anesthesiology in the hospital. Dr. Fierro was chairman of the department of anesthesiology at the hospital. He had a general responsibility for the administration of anesthesia. Dr. Vijil worked as a resident under the supervision of this department. There is proof that plaintiff in a prior operation, some 15 years earlier, had experienced difficulty in taking anesthesia and this became known to the house staff physician at Flower, who took the history on plaintiff's admission and noted this in the chart. Dr. Bell also knew of this and testified he told Dr. Berger about it before the operation.

There was some proof to the effect that Dr. Berger accompanied Dr. Vijil to the operating room and was there before or at the time the procedure started, but during the operation Dr. Vijil was alone with the operating surgeon and attending nurses. All this spells out a sufficient control of the anesthetist and a responsibility for the procedures followed, together with the specific signal of unusual reaction to anesthesia in the patient that the jury could find, to bring home a liability to the defendants Fierro and Berger.

The verdict of $150,000 is, however, heavily excessive. The apparent cessation of vital functions from cardiac arrest due to the effects of anesthesia until resuscitation procedures were successful, caused a cerebral anoxia. Plaintiff was unconscious for

several days.  Plaintiff's neurologist conceded that any permanent injury sustained by reason of cerebral anoxia would have become manifest a short time after the operation.  But on June 18, 1959, a month after the operation, the neurologist found plaintiff to be neurologically normal except for some unsteadiness of gait.  He had fairly good retention in a memory test and his speech was normal.  Three months after the operation it was observed at the Eastview Hospital that the " only mental symptoms noted is a slight memory defect which causes him to make frequent repetitious statements ".  In our view the later psychological symptoms observed in plaintiff are not sufficiently attributed to this single incident to justify a verdict in this magnitude and the record suggests there are other causes which contributed to his physical and mental condition.

The judgment should be modified on the law and the facts by dismissing the complaint as to defendant Street and directing entry of judgment for such defendant; and by reversing, on the law, on the facts and in the exercise of discretion, the judgment as to defendants New York Medical College, Flower and Fifth Avenue Hospitals, Frank Fierro and Howard C. Berger, doing business as Flower Anesthetists Associates, and directing a new trial as to such defendants, unless plaintiff stipulates to accept $75,000 in lieu of the award by verdict, in which event the judgment should be modified to that extent and affirmed as thus modified, without costs.

Botein, P. J., Rabin, Eager and Steuer JJ., concur.

Judgment unanimously modified on the law and the facts by dismissing the complaint as to defendant Street and directing entry of judgment for such defendant; and by reversing, on the law, on the facts and in the exercise of discretion, the judgment as to defendants New York Medical College, Flower and Fifth Avenue Hospitals, Frank Fierro and Howard C. Berger, doing business as Flower Anesthetists Associates, and directing a new trial as to such defendants, unless plaintiff stipulates to accept $75,000 in lieu of the award by verdict, in which event the judgment is modified to that extent and affirmed as thus modified, without costs.  Settle order on notice.