(No. 64467.—

SHIRLEY REED, Appellee, v. NATIVIDAD BASCON,
Special Adm'r, Appellant.

*Opinion filed September 22, 1988.*

Wildman, Harrold, Allen & Dixon, of Chicago (Ruth E. VanDemark and Debra A. Wong, of counsel), for appellant.

Joseph M. Tobias & Associates, of Chicago (Joseph M. Tobias, of counsel), for appellee.

JUSTICE RYAN delivered the opinion of the court:

In this medical malpractice action, the plaintiff, Shirley Reed, sued Dr. R. P. Bascon, Dr. A. O. Botuyan,

and Norwegian American Hospital in the circuit court of Cook County. The suit is based on complications following surgery by Dr. Botuyan. Dr. Bascon, a general practitioner, had referred the plaintiff to Dr. Botuyan, a surgeon. Dr. Bascon was not present during the surgery; however, he was identified as the attending physician on each page of plaintiff's hospital record, and saw the plaintiff each day of her hospital stay following surgery. Dr. Bascon's motion for summary judgment was granted by the trial court. The appellate court reversed. (148 Ill. App. 3d 389.) We granted Dr. Bascon's petition for leave to appeal. (107 Ill. 2d R. 315.) This case only involves the cause of action against Dr. Bascon and whether the trial court properly granted summary judgment in his favor.

On May 29, 1979, the plaintiff saw Dr. Bascon concerning rectal pain and bleeding. Dr. Bascon made a provisional diagnosis of hemorrhoids and suggested that an operation might be necessary. Dr. Bascon recommended immediate hospitalization.

On May 31, 1979, the plaintiff was admitted to Norwegian American Hospital. Because Dr. Bascon was a general practitioner, he referred the plaintiff to Dr. Botuyan, a board-certified surgeon, to determine if the plaintiff needed surgery. After Dr. Botuyan performed a proctosigmoidoscopy, he concluded that a hemorrhoidectomy was necessary. On June 1, 1979, Dr. Botuyan performed a modified Whitehead hemorrhoidectomy. Although Dr. Bascon saw a copy of the consultation report prior to surgery, he did not select the surgical procedure. As the attending physician, Dr. Bascon saw the plaintiff each day of her hospitalization but, as noted, was not present during the surgery. Dr. Bascon charged a fee for each visit he made to the plaintiff during her hospitalization; however, he did not charge or receive a fee for the surgery.

On June 8, 1979, the plaintiff was discharged from the hospital. She continued having pain following hospitalization, and also was having difficulty walking. Dr. Bascon, as the post-operative attending physician, informed the plaintiff that the difficulty with her leg was due to "poor circulation." He prescribed medicine and told the plaintiff to "walk around a little bit." Because she was unable to reach Dr. Bascon later and her condition had worsened, she went to Cook County Hospital emergency room. The plaintiff subsequently underwent surgery at Cook County Hospital on June 17 and July 10, 1979, for her condition, which was diagnosed as a veinous thrombosis and a rectal stricture.

Dr. Botuyan admitted in his deposition that he did not check current medical literature dealing with the modified Whitehead procedure until he was sued in this case. Dr. Botuyan discontinued performing the modified Whitehead hemorrhoidectomy upon discovering that the procedure was outmoded. The first count of plaintiff's second amended complaint is against Norwegian American Hospital. Counts II and III allege a cause of action jointly against Dr. Bascon and Dr. Botuyan. The second count was based on negligence and the third count was based on *res ipsa loquitur*.

In granting Dr. Bascon's motion for summary judgment, the trial court relied on *Beckwith v. Boynton* (1924), 235 Ill. App. 469, in holding that the attending physician could not be strictly or vicariously liable for the surgical procedure selected by the specialist, Dr. Botuyan. The trial court concluded that the plaintiff's cause of action was based upon the choice of surgical procedure and the surgery itself, because in her complaint the plaintiff alleged that the negligence occurred on June 1, 1979, the date of the surgery. Additionally, the trial court concluded that summary judgment was proper be-

cause there was not any allegation or proof of independent negligence on the part of Dr. Bascon.

The appellate court acknowledged that the pleadings were "drawn inartfully." However, the court concluded that because pleadings must be construed liberally on a motion for summary judgment, they "must be construed as alleging negligence against Dr. Bascon and Dr. Botuyan from May 1979, when plaintiff first came under their care, until June 1979, when she left them and sought professional help at Cook County Hospital." (148 Ill. App. 3d at 392.) The appellate court, therefore, reversed and found that a genuine issue of material fact existed as to: (1) whether Dr. Bascon was in active control of plaintiff's entire treatment; (2) whether there was concerted action between Dr. Bascon and Dr. Botuyan in their treatment of the plaintiff; and (3) whether Dr. Bascon was negligent in selecting Dr. Botuyan as the surgeon because he had used the outmoded modified Whitehead procedure. The appellate court expressed another concern which, in an adversary proceeding, we consider irrelevant, stating:

> "Granting summary judgment in favor of Dr. Bascon, on the basis of what happened on June 1, 1979, would leave the plaintiff at the mercy of any defense that may be raised by the surgeon. With Dr. Bascon safely out of the case, there would be a possibility of the surgeon acknowledging that although the surgical procedure was outmoded, it did not cause the injuries about which plaintiff complains. The blame could possibly be shifted to negligent post-operative care by Dr. Bascon." 148 Ill. App. 3d at 393.

Dr. Bascon, as petitioner, asserts that the appellate court decision radically expands the potential liability in medical malpractice actions for attending physicians. Moreover, Bascon contends that the appellate court's decision is contrary to long-standing Illinois law. Bascon

submits that an attending physician can be held vicariously or jointly liable for the malpractice of a surgeon *only if* there is an agency relationship between the attending physician and the surgeon, or the attending physician participated in the selection of the surgical procedure and has the training or expertise to evaluate the selection and the manner the procedure was carried out, or if the attending physician charged or received a fee for the surgery itself. (See *Beckwith v. Boynton* (1924), 235 Ill. App. 469.) The defendant further asserts that persuasive parallel authority supports the rule in Illinois that to be vicariously or jointly liable for the malpractice of a specialist to whom an attending physician has referred a patient, the attending physician must have had an agency relationship with the specialist or have participated in, controlled, directed, or profited from the specialist's practice. See, *e.g., Dahlberg v. Ogle* (1978), 268 Ind. 30, 373 N.E.2d 159; *Brown v. Bennett* (1909), 157 Mich. 654, 122 N.W. 305.

Finally, Bascon asserts that the appellate court's decision negates standard-of-care and summary judgment requirements in medical malpractice cases because the plaintiff never once alleged that Dr. Bascon was negligent in his selection of Dr. Botuyan. Alternatively, Dr. Bascon asserts that even if the plaintiff's attorney had represented that the plaintiff was also suing for Dr. Bascon's independent negligence, summary judgment was still properly entered by the trial court because there was no expert testimony establishing that Dr. Bascon deviated from the standard of care. (See *Walski v. Tiensenga* (1978), 72 Ill. 2d 249, 256.) Accordingly, Dr. Bascon contends that the plaintiff's failure to establish by expert testimony that he deviated from the standard of care in selecting Dr. Botuyan as the specialist mandates the entry of summary judgment. See, *e.g., Purtill v.*

*Hess* (1986), 111 Ill. 2d 229, 250; *Carter v. Dunlop* (1985), 138 Ill. App. 3d 58, 69.

The plaintiff, Reed, urges this court to affirm the decision of the appellate court because she contends that the case was not ripe for summary judgment. In support of this assertion plaintiff claims that she was under the care of both doctors from May 1979, when she entered the hospital for treatment and surgery, until she was released from the hospital in June 1979. Plaintiff alleges that the reason Dr. Bascon continued to see her while she was in the hospital was motivated by the fact that she had insurance coverage that would pay for Dr. Bascon's daily calls, as well as for Dr. Botuyan's services. Furthermore, the plaintiff submits that Bascon profited from the surgery because he charged the plaintiff while she was in the hospital.

We again point out that the cause of action alleged in the complaint is based on the alleged negligently performed surgery on June 1, 1979. There is no allegation that anything Dr. Bascon did before or after June 1, 1979, was performed in a negligent manner. There is also no allegation that Dr. Bascon was negligent in referring plaintiff's case to Dr. Botuyan.

In support of concerted-action liability, plaintiff claims that Dr. Bascon saw approximately 10 to 15 patients a year who suffered from hemorrhoids, and that he routinely referred patients that required surgery to Dr. Botuyan. Moreover, the plaintiff asserts that there is a question of material fact of whether there was "concerted action" because Dr. Bascon remained on the case for the entire duration plaintiff was in the hospital. Finally, the plaintiff asserts that Dr. Bascon should be estopped to deny the agency relationship because Dr. Bascon referred to Dr. Botuyan as "my doctor," "my consultant," and "my assistant."

We agree with the trial court and find that summary judgment was properly entered in favor of Dr. Bascon. Section 2—1005(c) of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c)) provides that summary judgment shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Although summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 292), it is a drastic measure and, therefore, should be allowed only when the right of the moving party is free from doubt (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; *Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1016). The court must construe the pleadings, depositions, admissions, exhibits, and affidavits on file strictly against the movant in determining whether a genuine issue of material fact exists. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398.

The appellate court in our case concluded that:

"Granting summary judgment in favor of Dr. Bascon, on the basis of what happened on June 1, 1979, *would leave the plaintiff at the mercy of any defense that may be raised by the surgeon.*" (Emphasis added.) (148 Ill. App. 3d at 393.)

While there is a possibility of this occurring, we do not find it dispositive of the summary judgment motion. Rather, the plaintiff's pleadings, affidavits, exhibits, and admissions control and, in this case, all wrongful acts and omissions allegedly occurred on June 1, 1979, and relate to the surgical procedure employed. Thus, the trial court was correct in concluding that the plaintiff's lawsuit was based upon the use of an outmoded surgical procedure and the surgery itself.

The appellate court further concluded there was a material question of fact as to whether Dr. Bascon was negligent in referring the plaintiff to Dr. Botuyan because of Dr. Botuyan's admission that he used an outmoded surgical procedure. (148 Ill. App. 3d at 392-93.) A referring physician will be held liable for the wrongful acts of another doctor if he failed to exercise due care in referring the patient to that doctor. (70 C.J.S. *Physicians and Surgeons* §84 (1987).) In *Cestone v. Harkavy* (1935), 243 A.D. 732, 732, 277 N.Y.S. 438, 439, the court concluded that the plaintiff had adequately alleged that a surgeon "was incompetent and unskilled to the knowledge of the defendant at the time he *** recommended him." However, in the case at bar there was no suggestion in the pleadings or in the facts contained in documents filed in support of or opposition to the summary judgment motion that Dr. Bascon had knowledge that the proposed surgical procedure was outmoded. (See *Mincey v. Blando* (Mo. App. 1983), 655 S.W.2d 609, 612.) While Dr. Botuyan's admission in his deposition that he used an outmoded surgical procedure may perhaps raise an inference of negligence on *his* part, it does not create a question of material fact, absent the plaintiff's pleading that there was a negligent referral and that Dr. Bascon had knowledge of Dr. Botuyan's alleged incompetence. See *Mid States Vending Service, Inc. v. C.A.P., Inc.* (1977), 45 Ill. App. 3d 947, 949.

The plaintiff also contends that Dr. Bascon should be estopped from denying the existence of an agency relationship because he referred to Dr. Botuyan as "my doctor" and "my consultant." The plaintiff argues that Dr. Bascon caused her to believe that Dr. Botuyan was his agent by these statements. This issue was raised for the first time in plaintiff's answer to the petition for leave to appeal. It is well settled, however, that issues not raised in the trial court are considered waived on appeal. (*West-*

*ern Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500.) Review of the record establishes that the issue was not raised in the trial court. Plaintiff's theory of estoppel or ostensible agency is clearly an afterthought. Not only was it raised for the first time in the answer to the petition for leave to appeal, but also, the plaintiff, in her deposition, did not indicate that she believed or was led to believe that Dr. Botuyan was the agent of Dr. Bascon. The mere fact that plaintiff stated that Dr. Bascon referred to Dr. Botuyan as "my doctor" and "my consultant" does not indicate that Dr. Bascon was holding Dr. Botuyan out as his agent, nor does it indicate the plaintiff believed he was doing so. At one place in her deposition, the plaintiff did state that Dr. Bascon said that "his assistant was going to do the surgery but that he would be there." However, the attorney interrogating the plaintiff then asked the question, "His assistant?" and the plaintiff responded, "Well, whatever he called Dr. Botuyan, he just said he was going to recommend me a doctor." If Dr. Botuyan were Dr. Bascon's assistant, such a relationship could be evidence of an agency. (See Annot., 85 A.L.R.2d 889, 895 (1962).) However, the plaintiff retracted the statement concerning Dr. Botuyan being an assistant and, as quoted above, simply said that Dr. Bascon just said, "he was going to recommend me a doctor." Consequently, there appears to be no material question of fact on the estoppel or ostensible agency theory. Thus, the only remaining issue is whether there was an agency relationship or concert of action between Dr. Bascon and Dr. Botuyan, or whether Dr. Bascon had the right to control the surgery.

The general rule is that a referring physician will not be liable for the other physician's negligence unless there is some control of the course of treatment of one by the other, agency or concert of action, or negligence in the referral. (*Stovall v. Harms* (1974), 214 Kan. 835, 840,

522 P.2d 353, 357; *Graddy v. New York Medical College* (1963), 19 A.D.2d 426, 428-29, 243 N.Y.S.2d 940, 943.) The plaintiff, Reed, asserts that there is a genuine question of material fact whether Dr. Bascon had control over Dr. Botuyan because, as the attending physician, he had the right to be present during the surgery, to intervene, and to stop the surgery at any moment. This assertion is not supported by the pleadings, affidavits or deposition. Dr. Bascon, in his deposition, stated that after Dr. Botuyan, as a consultant, made his recommendation for surgery, he, Dr. Bascon, as the attending physician, acknowledged that surgery was necessary. However, he stated that if the patient "went through the surgery it is beyond my [Bascon's] control." He stated that once he "said yes to the surgery," he was "not going to govern the details of the surgeon's performance of his operation." The evidence is uncontradicted that Dr. Botuyan was a licensed medical doctor practicing his specialty of surgery. Dr. Bascon was a general practitioner with no specialized knowledge or training in surgery. Also undisputed is the evidence that Dr. Bascon, not being a surgeon, had no knowledge about whether the surgical procedure used was outmoded. The surgery was performed for the benefit of Reed, and Dr. Bascon was not even present when the surgery was performed. Thus, it is clear from the record that Dr. Bascon did not have control over or the right to control the surgery or the selection of the surgical procedure.

In *Salgo v. Leland Stanford Jr. University Board of Trustees* (1957), 154 Cal. App. 2d 560, 317 P.2d 170, the defendant himself was a surgeon and had ordered a specific surgical procedure which was performed by another surgeon. The court held that the defendant, who was a surgeon, as an attending physician could not be held liable for the performance of the surgery, as he neither participated in nor had the right to direct it. The control

or the right to control the process is a significant factor in establishing whether a person is an agent or a servant of another. (*Stovall v. Harms* (1974), 214 Kan. 835, 842, 522 P.2d 353, 358.) We conclude therefore that the trial court was correct in holding that Dr. Bascon could not be vicariously liable for any negligence on the part of Dr. Botuyan on the basis of the doctrine of *respondeat superior* or agency.

Finally, we reject plaintiff's assertion that there was a concert of action by Dr. Botuyan and Dr. Bascon in the performance of the surgery and the selection of the surgical procedure. Vicarious liability has been imposed where doctors are jointly employed or engaged in a concert of action. Thus, in *O'Grady v. Wickman* (Fla. App. 1968), 213 So. 2d 321, the court held that it was error to grant summary judgment because a question of fact remained as to whether a concert of action and common purpose existed between the two doctors. The attending physician had admitted the plaintiff to the hospital, recommended the specific surgical procedure, consulted with another doctor, who performed the surgery, and was present in the operating room during the allegedly negligent hysterectomy. Furthermore, the consent to perform the surgery signed by plaintiff authorized both the surgeon and the defendant to perform the surgery. On the other hand, the supreme court of Indiana refused to find vicarious or joint liability on the part of the referring physician for the surgeon's decision to forgo surgery and pursue conservative drug treatments instead. (*Dahlberg v. Ogle* (1978), 268 Ind. 30, 373 N.E.2d 159.) In *Dahlberg* the referring physician admitted the patient to the hospital, called the surgeon and visited the patient daily in the hospital and discussed the case with the surgeon. (268 Ind. at 34-35, 373 N.E.2d at 161.) Despite the surgeon's testimony that he worked "synchronously together" with the referring doctor, the court concluded:

"[The general practitioner] maintained his professional relationship with his patient while he was in the hospital \*\*\*. By his personal presence he provided support for his patient and information and support for [the surgeon]. He did assume control of the patient after ten days of unsuccessful conservative treatment by drugs, however that fact would not warrant the inference that he made decisions with regard to surgical matters and antibiotic dosages during the preceding ten-day period. The record therefore fails to demonstrate that \*\*\* [the general practitioner] \*\*\* shared a legal duty which was breached by the alleged wrongful acts of the surgeon \*\*\*." *Dahlberg*, 268 Ind. at 36, 373 N.E.2d at 163.

In granting summary judgment in favor of Dr. Bascon, the trial court relied on *Beckwith v. Boynton* (1924), 235 Ill. App. 469, in concluding there was no concert of action between the two doctors in the selection of the surgical procedure and the performance of it. *Beckwith* involved an action to recover damages for injuries the plaintiff suffered during surgery, against the surgeon and general practitioner who recommended the surgeon. The general practitioner advised the plaintiff's family that she would need a tonsillectomy. (235 Ill. App. at 473.) Although the general practitioner was present during the operation, he took no part in it and neither charged nor expected pay for his part of the operation. (235 Ill. App. at 479.) The court acknowledged that the plaintiff was wrongfully injured; however, it concluded that the referring doctor, Boynton, could not be vicariously or jointly liable, stating:

"[A]ppellant Boynton had nothing to do with [the injury], and no witness has testified to any fact which charges him with an act of omission or commission. Appellant Boynton received no fee; he employed neither of the other appellants in the sense that he had any direction over them. Boynton was the family physician, in a small

country village, who did not even pretend to be skilled in the operation of tonsillectomy." 235 Ill. App. at 485-86.

The appellate court in this case found the facts in *Beckwith* distinguishable because the family physician in *Beckwith* acted as a "Good Samaritan" in arranging and attending the surgery, whereas the court concluded that Dr. Bascon was motivated by "plaintiff's insurance coverage, which paid him for each visit he made at the hospital." (148 Ill. App. 3d at 395.) (The record does not support the appellate court's conclusion and the plaintiff's contention that the insurance company paid Dr. Bascon for his hospital visits to plaintiff.) The appellate court found the facts in the case at bar to be more analogous to *Morrill v. Komasinski* (1950), 256 Wis. 417, 41 N.W.2d 620. In *Morrill*, the plaintiff sued her family physician and two other doctors for negligently diagnosing and treating her broken arm. Dr. Komasinski asserted that he could not be liable for Dr. Bump's malpractice because he merely recommended that Dr. Bump set plaintiff's arm. (256 Wis. at 426, 41 N.W.2d at 624.) The Wisconsin Supreme Court found that Dr. Komasinski participated in the diagnosis and continued in active charge of plaintiff's case after the cast was applied and therefore was jointly liable with the other doctors. Based upon *Morrill*, the appellate court found there was a genuine issue of material fact whether there was concerted action between Dr. Bascon and Dr. Botuyan in their treatment of the plaintiff.

There are crucial differences between the case at bar and *Morrill*. In *Morrill*, Dr. Komasinski was present when the cast was applied and had participated in the diagnosis and proposed treatment. Significantly in the case at bar, Dr. Bascon only made a provisional diagnosis of hemorrhoids and then referred the plaintiff to Dr. Botuyan. Moreover, Dr. Bascon did not select the proposed surgical procedure and was not present when the sur-

gery was performed. Thus, the fact that Dr. Bascon continued to see the plaintiff while she was in the hospital and to charge for those visits was insufficient to conclude there was concerted action in this case when he was neither present during the surgery nor recommended the proposed treatment. See *Mincey v. Blando* (Mo. App. 1983), 655 S.W.2d 609, 612.

In conclusion, we hold that the trial court was correct in granting Dr. Bascon's motion for summary judgment. For the reasons set forth above, the judgment of the appellate court is reversed and the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.