JOHN STEINBERG *et al.*, as Adm'rs of the Estate of Shannan Steinberg, Deceased, Plaintiffs-Appellants, v. WARD DUNSETH *et al.*, Defendants (James Drennan, Defendant-Appellee).

Fourth District   No. 4—93—0569

Argued December 14, 1993.—Opinion filed March 18, 1994.

Rick Verticchio (argued), of Phelps, Kasten, Verticchio & Ruyle, of Gillespie, for appellants.

Robert E. Gillespie, John E. Nolan (argued), and William P. Hardy, all of Hinshaw & Culbertson, of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

This is an appeal in a medical malpractice action from a grant of summary judgment in favor of defendant Drennan. The issue presented on appeal is whether an attending physician, under the facts of this case, can be held vicariously liable for a covering physician's negligence. We affirm.

Plaintiffs' decedent, Shannan Steinberg, incurred injuries in a car accident on July 11, 1991, and was admitted to the intensive care unit of Passavant Area Hospital (Passavant). She came under the care and treatment of defendant Dr. James Drennan. During the early morning hours of July 18, 1991, Shannan developed a respiratory problem and was examined by Drennan, who ordered inhalation therapy and X rays. Drennan was thereafter required to be absent from the hospital for the rest of the day. When the results of the

X rays ordered by Drennan were returned from the laboratory, the nursing staff of Passavant contacted Dr. Dunseth, as the covering physician for Drennan. Dunseth determined it was necessary to perform a surgical procedure on Shannan to alleviate her respiratory problem. As a result of the surgery, Shannan suffered cardiac arrest and lapsed into a vegetative coma. She was subsequently taken off life support and died on July 29, 1991.

Plaintiffs filed a complaint for negligence against Dunseth, Dr. Petra (the anesthetist), and the hospital. Plaintiffs subsequently amended the complaint to add counts against Drennan as an additional defendant, based on a theory of vicarious liability for the alleged negligence of Dunseth in performing the surgical procedure on July 18, 1991. In support plaintiff offered the deposition testimony of Drennan and an affidavit of Jane Steinberg, Shannan's mother. Drennan's deposition stated that he and Dunseth had an agreement to assume the care of the other's patients if one of them was required to be out of town. Mrs. Steinberg's affidavit indicated that she was not advised Drennan would be unable to render care and treatment to Shannan on July 18, 1991. In granting summary judgment for Drennan, the trial court noted that a referring physician will not be liable for another physician's negligence unless there is some control of the course of treatment, concert of action, or negligence in the referral, none of which were present in this case. The court also noted that plaintiffs had failed to establish an apparent agency, which required a showing that Drennan held out Dunseth to be his agent and that plaintiffs relied on that representation. The court concluded the act of one physician covering for another does not create an ostensible or apparent agency.

Physicians are sometimes held vicariously liable for the negligent acts of other physicians. A physician who employs another physician may be held vicariously liable for the physician-employee's negligent acts committed while acting in the scope of employment, despite the argument that the physician-employee is an independent contractor. Even ship captains and officers of corporations may be considered "servants." (See Restatement (Second) of Agency § 2, Comment c; § 220, Comment d (1958).) A medical partnership (and its partners) is vicariously liable for the torts of partners committed in the course of the partnership business. (*Comfort v. Wheaton Family Practice* (1992), 229 Ill. App. 3d 828, 833, 594 N.E.2d 381, 385; see *Cunningham v. Huffman* (1993), 154 Ill. 2d 398, 408, 609 N.E.2d 321, 326 (vicarious liability of clinic); *cf. Fure v. Sherman Hospital* (1977), 55 Ill. App. 3d 572, 574, 371 N.E.2d 143, 144 (Medical Corporation Act (Ill. Rev. Stat. 1973, ch. 32, par. 631 *et seq.*) imposes personal liability only upon the

physician furnishing medical service).) Physicians who are employed together, who diagnose and treat the case together, without withdrawal by or discharge of either, are both responsible if the treatment is negligent. See 61 Am. Jur. 2d *Physicians, Surgeons, and Other Healers* § 292 (1981).

Plaintiffs direct our attention to the supreme court's recent decision in *Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 519, 524, 622 N.E.2d 788, 792-93, 795, where the court held that under the doctrine of apparent authority a hospital could be held vicariously liable for the negligent acts of a physician (an independent contractor) providing care at the hospital, unless the patient knows or should have known that the physician is an independent contractor. There are some similarities between *Gilbert* and this case. In *Gilbert* the patient went to the hospital for treatment and ended up being treated by the emergency room physician. In this case the patient went to Drennan for treatment and ended up being treated by Dunseth. There is a difference, however, in that the patient in *Gilbert* knew that he would be treated by some individual, not the hospital itself. The patient here expected that Drennan would treat her and had no reason to believe that an employee of Drennan would treat her if Drennan were not available.

Plaintiffs knew that Shannan would be treated by Dunseth on July 18, not by Drennan, and plaintiff Jane Steinberg signed a consent for that treatment. Drennan made no representation regarding Dunseth. Dunseth was not using Drennan's equipment, facilities or staff and Dunseth made no express affirmation that he was an agent or employee of Drennan. Any inference of a connection between Dunseth and Drennan is certainly minimal in comparison to *Gilbert*. In *Gilbert* (156 Ill. 2d at 520, 622 N.E.2d at 793) the court relied on "two realities of modern hospital care." The first reality involved the business of a modern hospital: that modern hospitals have spent billions of dollars marketing themselves, nurturing the image with the consuming public that they are full-care modern health facilities, with the emergency room being a major component of that business. The second reality involved the reasonable expectations of the public: that patients rely on the reputation of the hospital and have no reason to know of private contractual arrangements intended to insulate the hospital from liability. (*Gilbert*, 156 Ill. 2d at 520-21, 622 N.E.2d at 793-94.) Nothing like that is present in this case.

The Court of Appeals of New York thoroughly analyzed issues similar to those presented here in *Kavanaugh v. Nussbaum* (1988), 71 N.Y.2d 535, 523 N.E.2d 284, 528 N.Y.S.2d 8. In *Kavanaugh* a

pregnant woman, Mrs. Gonzales, was treated by Dr. Caypinar. She was taken one night to the emergency room, where the emergency room physician contacted the covering physician, Dr. Swenson, who told him to send the woman home and have her contact Caypinar in the morning. Gonzales returned to the emergency room a few hours later where a loss of fetal heartbeat was detected, a Caesarian section performed, and the child delivered with permanent injury. Caypinar, Swenson, and two other doctors had an arrangement whereby each took turns covering for the others. Each retained the entire fee from his own patient, even though services might have been rendered that patient by the others. (Such an arrangement would seem to discourage a covering physician from doing much work.)

The trial court concluded there were three reasons supporting the imposition of vicarious liability:

> "First, even if Drs. Caypinar and Swenson were not partners, employees or employers of each other and shared no fees, the covering arrangement was for their mutual benefit; their arrangement afforded continuous treatment for their patients and enabled them to satisfy what appeared to be the hospital's requirement for privileges [that doctors with privileges be continuously available for emergencies]. Second, Mrs. Gonzales had an ongoing relationship with Dr. Caypinar, and had the right to expect satisfactory treatment from him, which included persons to whom he directed her. Third, Mrs. Gonzales had no knowledge of the arrangement and no opportunity to participate in the selection of the covering doctor \*\*\*." *Kavanaugh*, 71 N.Y.2d at 546, 523 N.E.2d at 287, 528 N.Y.S.2d at 11.

The Court of Appeals of New York reversed, following the decision in *Graddy v. New York Medical College* (1963), 19 A.D.2d 426, 243 N.Y.S.2d 940, *motion to dismiss appeal denied* (1964), 13 N.Y.2d 1175, 197 N.E.2d 541, 248 N.Y.S.2d 54, where the physicians in fact shared office space, services, equipment and supplies, and even certain fees. (Our supreme court has cited *Graddy* with approval in *Reed v. Bascon* (1988), 124 Ill. 2d 386, 396, 530 N.E.2d 417, 421 (a case where the patient had been referred to a specialist).) Although the years since *Graddy* had seen the development of medical clinics and group practices, which engendered new questions about imputed liability, the court of appeals continued the rule of nonliability. (*Kavanaugh*, 71 N.Y.2d at 547, 523 N.E.2d at 288, 528 N.Y.S.2d at 12.) The fact that the Caypinar-Swenson relationship was regular and mutually beneficial was not dispositive. Similar elements existed in *Graddy* and probably every covering arrangement. The *Kavanaugh* court determined, as a matter of policy, that imposition of liability

would discourage covering arrangements " 'and thus curtail the availability of medical service.' " (*Kavanaugh*, 71 N.Y.2d at 548, 523 N.E.2d at 289, 528 N.Y.S.2d at 13, quoting *Graddy*, 19 A.D.2d at 430, 243 N.Y.S.2d at 945.) Emergencies can arise at any moment, and even absent emergencies "surely no person expects that his or her regular physician will *always* be there to respond." (Emphasis in original.) (*Kavanaugh*, 71 N.Y.2d at 548, 523 N.E.2d at 289, 528 N.Y.S.2d at 13.) The *Kavanaugh* court noted that doctors remain answerable for their own fault, for example, "for negligence in their designation of covering doctors, or for their own joint participation with them in diagnosis or treatment or—as in this very case—for failing to advise the covering doctor of potential risks involved." (*Kavanaugh*, 71 N.Y.2d at 549, 523 N.E.2d at 289, 528 N.Y.S.2d at 13.) The court was critical of Caypinar for not telling the patient what covering arrangements had been made, but held that nondisclosure could not make him vicariously liable for the independent negligence of the covering physician.

A similar approach was taken by the Supreme Court of Illinois when it considered the liability of a referring physician for the acts of a specialist to whom the patient had been referred. The court held there was no liability in the case before it, but indicated there might be liability in some cases. "The general rule is that a referring physician will not be liable for the other physician's negligence unless there is some control of the course of treatment of one by the other, agency or concert of action, or negligence in the referral." (*Reed*, 124 Ill. 2d at 395, 530 N.E.2d at 421.) Concert of action may exist where the referring physician continues to see the patient, charges for those visits, is present during the surgery or recommended the proposed treatment. *Reed*, 124 Ill. 2d at 399-400, 530 N.E.2d at 423.

In *Reed* the fact that the attending physician made a provisional diagnosis before referral, continued to see the patient while she was in the hospital, and charged for those visits, was not enough to make the physician vicariously liable for the negligence of the surgeon, "when he was neither present during the surgery nor recommended the proposed treatment." *Reed*, 124 Ill. 2d at 400, 530 N.E.2d at 423; see also *Beckwith v. Boynton* (1924), 235 Ill. App. 469 (general practitioner recommended surgery, recommended the surgeon, was present during the surgery, but charged no fee; held, no vicarious liability).

An argument can be made for vicarious liability in this case. The modern justification for vicarious liability is that one who seeks to profit from the acts of others should be responsible for their torts. (W. Keeton, Prosser & Keeton on Torts § 69, at 500-01 (5th ed. 1984).) Control is "a significant factor" in determining vicarious liability

(*Reed*, 124 Ill. 2d at 397, 530 N.E.2d at 422), but so is the idea that one who regularly benefits from the actions of another should be responsible when that person makes mistakes. (See Restatement (Second) of Agency § 219, Comment *a* (1958).) An attending physician benefits from a coverage arrangement, which allows him to treat more patients and gives him some of the benefits of group practice. It is possible for a coverage arrangement to be used so extensively that the covering physicians have more contact with the patient than does the attending physician, the only one selected by the patient. Physicians should not be viewed as interchangeable and it is important that the various treatments given a patient be coordinated. Nevertheless, the supreme court in *Reed* held facts similar to those in this case were not sufficient for vicarious liability. There are differences between coverage and referrals, but we see no sufficient reason not to apply *Reed* in this coverage case. We agree with the statement in *Kavanaugh* that imposition of liability will discourage coverage arrangements and curtail the availability of medical service. *Kavanaugh* and *Graddy* hold the same as *Reed*, on facts more difficult than those before us. It is enough here that Drennan may be held liable for his own actions if he negligently selected a covering physician whom he should have known to be inadequate. *Reed*, 124 Ill. 2d at 394, 530 N.E.2d at 420.

The order of summary judgment in favor of defendant Drennan is affirmed.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.